**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | | |
|---|---|---|
| PATRICK and JEANNE STILLMOCK, individually and on behalf of all others similarly situated | ) ) ) | |
| | ) | No. 1:07-cv-01342-MJG |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WEIS MARKETS, INC. and DOES 1-10 | ) ) | CLASS ACTION |
| Defendants. | ) ) ) | |

| | | |
|---|---|---|
| JENNY BARNSTEIN, on behalf of herself and all others similarly situated | ) ) ) | |
| | ) | No. 1:07-cv-1466-MJG |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WEIS MARKETS, INC. | ) ) | CLASS ACTION |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR CERTIFICATION OF THE CLASS**

Richard S. Gordon, Fed. Bar  06882
Martin E. Wolf Fed. Bar  09425
Cory L. Zajdel, Fed. Bar  28191
QUINN, GORDON & WOLF, CHTD.
102 West Pennsylvania Ave., St. 402
Baltimore, Maryland  21204
Telephone:  (410) 825-2300
Facsimile:  (410) 825-0066

David A. Searles
DONOVAN SEARLES, LLC
145 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067
Facsimile:  (215) 732-8060

Jason M. Rapa, Esquire
RAPA LAW OFFICE, P.C.
141 S. 1st Street
Lehighton, PA 18235

Katherine B. Bornstein Fed. Bar 28460
Lisa Mellas
SCHIFFRIN BARROWAY TOPAZ
 &KESSLER, LLP
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

Robert K. Jenner Fed. Bar 01465
John J. Cord Fed. Bar 16758
Keith D. Forman Fed. Bar 28349
JANET, JENNER & SUGGS, LLC
1829 Reisterstown Rd., Suite 320
Baltimore, MD 21208
Telephone:  (410) 653-3200

James A. Francis, Esquire
FRANCIS & MAILMAN, P.C.
100 South Broad St., 19th Floor
Philadelphia, PA 19100

**Attorneys for Plaintiffs**

**Table of Contents**

                                                                        Page

Introduction  .........................................................................................   1

I.      FACTUAL BACKGROUND ……………………………………….   2

        A.      The Allegations of the Complaints ……………………….……   4
                1.      Patrick and Jeanne Stillmock …………………………...   5
                2.      Leonid Opacic ……………………………………………   5
                3.      Jenny Barnstein …………………………………………   6
        B.      Identity Theft is the Fastest Growing Crime in the United States ...   8
        C.      Each Digit in a Plastic Payment Card Account Number Has
                Significance and is Valuable to Identity Thieves ………………...   10
        D.      FACTA Was Enacted, in part, to Stem the Tide of Identity Theft ..   10
        E.      Discovery Confirms that the Class is Not Limited to
                Named Plaintiffs ……………………………………………..   13

II.     THE COURT SHOULD CERTIFY THE CLASS IN THIS CASE ………...   15
        A.      Governing Principles …………………………………………...   15
                1.      RULE 23 Favors Certification ………………………………   16
                2.      This is the Very Type of Case for Which the Class
                        Action Mechanism was Established ………………………..   17
        B.      Legal Requirements for Certification ………………………………..   17
                RULE 23(a)(1) – Numerosity ……………………………………   18
                RULE 23(a)(2) – Commonality of Issues ………………………………   19
                RULE 23(a)(3) – Typicality of Claims …………………………………   21
                RULE 23(a)(4) – Adequacy of Representation …………………………   23
        C.      A Class Action Is Appropriate Because the Criteria of RULE 23(b)
                Are Satisfied ……………………………………………..………   24
                RULE 23(b)(2) ……………………………………………………..   25
                RULE 23(b)(3) ……………………………………………………..   26

III.    CONCLUSION …………………………………………………………...   32

**Table of Authorities**

**Page**

*Accord Arrington v. Colleen, Inc.,* 2001 WL 34117734 (D. Md. Apr. 2, 2001)…. 16, 20, 28

*Amchem Products, Inc. v. George Windsor, et al.*, 521 U.S. 591 (1997) ………… 17, 27

*American Finance System, Inc. v. Harlow,* 65 F.R.D. 94 (D. Md. 1974) ………… 21

*Benway v. Resource Real Estate Services, LLC,* 239 F.R.D. 410 (D. Md. 2006)… 2

*Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975)………………………………. 4, 27

*Bogosian v. Golf Oil Corp.,* 561 F.2d 434 (3d Cir. 1977)………………………. 23, 26

*Briggs v. Brown & Williamson Tobacco Corp., Inc.,* 414 F. Supp. 371
(E.D. Va. 1976) ………………………………………………………………… 22

*Brown v. Cameron-Brown,* 92 F.R.D. 32 (E.D. Va. 1981) ……………………… 20

*Brown v. Eckerd Drugs, Inc.*, 663 F.2d 1268 (4th Cir. 1981) …………………….. 3

*Bruce v. Keybank Nat'l Ass'n,*  2006 WL 2334846 (N.D. Ind. Aug. 7, 2006) …. 3

*Chapelle v. E.I. DuPont DeNemours & Co.,* 75 F.R.D. 74 (E.D. Va. 1977) …… 21

*Chisolm v. TranSouth Financial Corp.,* 184 F.R.D. 556 (E.D. Va. 1999) …….. 31

*Claffey v. River Oaks Hyundai, Inc.,* 238 F.R.D. 464 (N.D. Ill. 2006) …………. 3

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n.,* 375 F.2d 648
(4th Cir. 1967) ………………………………………………………………… 18

*Dameron v. Sinai Hospital of Baltimore, Inc.,* 595 F. Supp. 1404
(D. Md. 1984) ………………………………………………………………… 18

*Eshaghi v. Hanley Dawson Cadillac Co.,* 574 N.E. 2d 760 (Ill. 1991) …………. 16

*Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925 (11th Cir. 1983) ……………... 18

*Folsum v. Blum,* 87 F.R.D. 443 (S.D.N.Y. 1980) ……………………………… 18

*Gariety v. Grant Thornton, LLP,* 368 F.3d 356 (4th Cir. 2004) …………………. 3

*George v. Baltimore City Public Schools,* 117 F.R.D. 368 (D. Md. 1987) ......... 23, 25

*German v. Federal Home Loan Mortgage Corp.,* 885 F. Supp. 537
(S.D.N.Y. 1995) ................................................................................... 20

*Guarte v. Furniture Fair, Inc.,* 75 F.R.D. 525 (D. Md. 1977) ...................... 17

*Halperin v. Interpark, Inc.,* 2007 WL 4219419 (N.D. Ill. Nov. 29, 2007) ......... 18, 31

*Harris v. Circuit City Stores, Inc.,* 2008 WL 400862 (N.D. Ill. Feb. 7, 2008) .... 7, 31

*Harris v. Palm Springs Alpine Estates,* 329 F.2d 909 (9th Cir. 1964) .............. 21

*Heastie v. Community Bank of Greater Peoria,* 125 F.R.D. 669
(M.D. Ill. 1989) ................................................................................. 25

*Himmler v. Weinberger,* 422 F. Supp. 196 (E.D. Mich. 1976) ...................... 21

*In Re A. H. ARobbins Co.,* 880 F.2d 709 (4th Cir. 1989) ........................... 17

*In re Amerifirst Sec. Litig.,* 139 F.R.D. 423 (S.D. Fla. 1991) ...................... 16

*In Re Carbon Dioxide Anti-Trust Litigation,* 19 F.R.D. 229 (M.D. Fla. 1993) .. 17

*In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493
(S.D.N.Y. 1996) ................................................................................. 27

*In re Prudential Insur. Sales Practices Litig.,* 962 F. Supp. 450
(D.N.J. 1997) .................................................................................... 27

*In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322 (E.D. Pa. 1976).......... 26

*In Re: Visa Check/Master Money Antitrust Litigation,* 280 F.3d 124
(2nd Cir. 2001) .................................................................................. 29

*Jackson v. Check"N Go of Illinois, Inc.,* 193 F.R.D. 544 (N.D. Ill. 2000)  ..... 28

*Keasler v. Natural Gas Pipeline Co. of Amer.,* 84 F.R.D. 364
(E.D. Tex. 1979) ................................................................................ 4

*Kesler v. IKEA U.S., Inc.,* 2008 WL 413268 (C.D. Cal. Feb. 4, 2008) ........... 7, 31

*Kohl v. Assoc. of Trial Lawyers of America,* 183 F.R.D. 745 (D. Md. 1998) ... 17, 23

*Kudlicki v. Farragut Fin. Corp.,* 2006 WL 92728 (N.D. Ill. Jan 20, 2006) ..... 3

*Longden v. Sunderman*, 123 F.R.D. 547 (N.D. Tex. 1988) ……………………… 4

*Medrano v. WCG Holdings, Inc.,* 2007 WL 4922525
(C. D. Cal. Oct. 26, 2007) ………………………………………………… 8, 31

*Mitchell-Tracey v. United General Title Insurance Co.,* 237 F.R.D. 551
(D. Md. 2006) …………………………………………………………… *passim*

*Murray v. GMAC Mortg. Corp.,* 434 F.3d 948 (7th Cir. 2006) ………………… 3, 31

*Peoples v. Wendover Funding, Inc.,* 179 F.R.D. 492 (D. Md. 1998) …………. *passim*

*Perry v. FleetBoston Fin. Corp.,* 229 F.R.D. 105 (E.D. Pa. 2005 ……………. 3

*Phillips Petroleum Company v. Shutts,* 472 U.S. 797 (1985) ………………… 17

*Ramirez v. Webb,* 102 F.R.D. 968 (W.D. Mich. 1984) ……………………….. 22, 26

*Reynoso v. South County Concepts, Inc.,* 2007 WL 4922524
(C.D. Cal. Oct. 26, 2007) ………………………………………………… 8, 31

*Safeco Insurance Co. of America v. Burr,* 127 S. Ct. 2201 (2007) …………… 13, 26

*Trief v. Dun & Bradstreet Corp.,* 144 F.R.D. 193 (S.D.N.Y. 1992) ………….. 20

*Troy v. Red Lantern Inn., Inc.,* 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007) ….. 7, 31

*Twyman v. Rockville Housing Auth.,* 99 F.R.D. 314 (D. Md. 1983) ………….. 17

*Watkins v. Simmons and Clark, Inc.,* 618 F.2d 398 (6th Cir. 1980) …………… 31

*Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239 (3d Cir. 1975) …………………. 23

*White v. E-Loan,* 2006 U.S. Dist. LEXIS 62654 (N.D. Cal. Aug. 18, 2006) …. 3

*White v. Imperial Adjustment Corp.,* 75 Fed. Appx. 972 (5th Cir. 2003) ……… 3

*Williams v. LexisNexis Risk Management, Inc.,* 2007 WL 2439463
(E.D. Va. Aug. 23, 2007) ………………………………………………….. 3, 31

*Woods v. Stewart Title Guaranty Company,* 2007 WL 2872219
(D. Md. Sept. 17, 2007) …………………………………………………… 2

## List of Unreported Cases

**Page**

*Cicilline v. Jewel Food Stores, Inc.* No. 9-07-2333 (N.D. Ill.) ………………..    7, 31

*Ehrheart v. Lifetime Brands, Inc.,* No. 07-01433 (E.D. Pa.) …………………..    8

*Ehrheart v. Pro Image Franchise, LLC*, No. 07-0447 (W.D. Pa.) …………….    8

*Farrow v. Capital One Auto Finance, Inc.,* No. CCB-06-2324 (D. Md.) ……..    3, 31

*Goldin v. Uni-Marts, LLC*, No. 97-0666 (W.D. Pa.) …………………………..    8

*Klingensmith v. Max & Erma's Restaurants, Inc.,* No. 97-0318 (W.D. Pa.) …..    8

*Palamara v. King's Family Restaurant,* No. 07-317 (W.D. Pa.) ………………    8

*Pivarni v. Lamrite West, Inc.*, No. 97-00321 (W. D. Pa.) …………………………    8

*Reed v. Whole Enchilada, Inc.,* No. 2:07-00357 (W.D. Pa.) ……………………    8

*Sinatra v. Coventry Restaurant Systems, Inc.,* No. 07-0445 (W.D. Pa) …………    8

## **Introduction**

This case challenges Defendant Weis Markets, Inc.'s (hereinafter "Weis Markets") egregious violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, as amended by the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g),[1] in providing consumers with electronically printed receipts containing ***ten digits*** (the first six and last four) of its customers' credit and debit card ("plastic payment card") account numbers, thereby elevating their risk of identity theft. Plaintiffs seek both declaratory relief and statutory damages on behalf of themselves and the thousands of other consumers victimized and placed at risk by Defendant's unlawful practice. As set forth below, the case should be certified as a class action "as soon as practicable" because it easily meets all the requirements of the class certification rule. FED. R. CIV. P. 23 ("RULE 23").

Based upon the allegations of this case, and subsequent discovery, Plaintiffs propose that the Court certify a Class consisting of the following individuals:

> All persons in the United States to whom, on or after the effective and applicable dates for FACTA compliance and continuing through the resolution of this case, received from Defendant at any of its retail locations, an electronically printed receipt at the point of sale or transaction which contained more than the last five digits of the person's credit or debit card number.

Plaintiffs also request that this Court certify the following sub-class:[2]

---

[1]   As set forth in more detail below, under FACTA merchants are prohibited from including more than the last five (5) digits of a consumer's plastic payment card account number on an electronically printed receipt. Accordingly, Defendant's violations as alleged herein significantly raise consumers' risk of identity theft should a Weis Markets receipt fall into the wrong hands.

[2]   As will be discussed in more detail below, three separate Class Action Complaints were filed against Weis Markets alleging FACTA violations. *Stillmock v. Weis Markets, Inc.*, C.A. No. MJG-07-1342 (D. Md.) (filed May 21, 2007) (hereinafter "Stillmock Complaint"); *Opacic v. Weis Markets, Inc.*, C.A. No. 07-2188 (E.D. Pa.) (filed May 29, 2007) (hereinafter "Opacic Complaint"); *Barnstein v. Weis Markets, Inc.*, C.A. No. MJG-07-1466 (D. Md.) (filed June 5, 2007) (hereinafter "Barnstein Complaint"). The three cases were consolidated and are proceeding through class discovery and certification briefing under the *Stillmock* case caption. The *Stillmock* and *Barnstein* matters each alleged national Classes while the *Opacic* matter alleged only a Class of consumers making

> All persons to whom, on or after December 4, 2006 and continuing through the resolution of this case, Defendants provided an electronically printed receipt at the point of sale or transaction specifically Weis Markets store number 186 at 2305 Schoenersville Road, Bethlehem, Pennsylvania 18017 on which Defendants printed more than the last five digits of the person's credit or debit card number.

Excluded from the Class are those individuals who have suffered actual damages due to identity theft caused by Defendant's FACTA violations.  Also excluded from the Class are those individuals who are now or have ever been executives of Defendant.

Because Defendant's illegal practice – as described in detail below – was uniform, consistent and similarly harmed thousands of consumers, the Court should certify the Class at this time.

## I.   FACTUAL BACKGROUND

---

plastic payment card purchases at Weis Markets store number 186 located at 2305 Schoenersville Road, Bethlehem, Pennsylvania 18017.  The *Opacic* matter also limits the class period from December 4, 2006 to the present while the *Stillmock* and *Barnstein* matters alleged class periods from FACTA's effective date until the present.  The Class and Sub-Class proposed above, however, contain all of the consumers represented by the three cases.

Plaintiffs are requesting that this Court certify a Class and a sub-Class that are slightly modified from that alleged in the Complaints.  For instance, due to an amendment to FACTA (The Credit and Debit Card Receipt Clarification Act of 2007, PL 110-241, 122 Stat. 1565 (2008)), Plaintiffs are no longer seeking to certify Classes based on printing the plastic payment card expiration date on the receipt.  The Credit and Debit Card Receipt Clarification Act of 2007 will be discussed in greater detail below.  *See* fn. 11.  Moreover, although the allegations of the three Class Action Complaints make it clear that Plaintiffs are pursuing only statutory damages, Plaintiffs have added a provision specifically excluding from the Class consumers who have already suffered actual damages by identity theft caused by a FACTA violation.

These modifications should cause no harm to class certification because the slightly modified Classes are encompassed within the original Class definitions, the allegations of the Complaint and all purported Class members were harmed in the same manner and by the same conduct of the Defendant.  FED. R. CIV. P. 23(c)(1)(C) gives District Courts broad discretion to modify the class definition until there is a decision on the merits.  *See* 2 H. NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS § 6.14 (4th ed. 2006) ("broad discretion [under Rule 23] to modify the definition of the class even after certification.").  The discretion to modify the class definition has previously been applied in Maryland to limit membership in the Class and when discovery has uncovered a more widespread class of harmed individuals that could benefit from inclusion in a pending class action.  *See Benway v. Resource Real Estate Services, LLC*, 239 F.R.D. 419 (D. Md. 2006) (limiting the class of consumers *sua sponte*); *Woods v. Stewart Title Guaranty Company*, 2007 WL 2872219 (D. Md. Sept. 17, 2007) (certifying a class of individuals as proposed by plaintiffs during class certification briefing that was broader than the class plaintiffs' alleged in the class action complaint after discovery uncovered a broader group of individuals harmed by the same practice alleged in the complaint).

The Named Plaintiffs and the putative Class Members share one principal issue which place them in the identical factual and legal posture with respect to Defendant – namely, whether Defendant, in violation of federal law, provided them with electronically printed receipts at the point of sale that contained more than the last five digits of their plastic payment card numbers. This case, therefore, is analogous to other straightforward consumer cases – including FCRA cases – that have been are routinely certified as class actions by courts in Maryland and elsewhere. *See e.g. Mitchell-Tracey v. United General Title Insurance Co., et. al.*, 237 F.R.D. 551 (D. Md. 2006) (granting certification of consumer class against title insurers who failed to provide the tariffed reissue rate); *Farrow v. Capital One Auto Finance, Inc., No.*, CCB-06-2324 (D. Md.) (certifying Fair Credit Reporting Act class action) (Order dated May 18, 2007 attached hereto as **Exhibit 1**); *Williams v. LexisNexis Risk Management, Inc.*, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) (same); *White v. Imperial Adjustment Corp.*, 75 Fed. Appx. 972 (5th Cir. 2003); *Claffey v. River Oaks Hyundai, Inc.*, 238 F.R.D. 464 (N.D. Ill. 2006); *Kudlicki v. Farragut Fin. Corp.*, 2006 WL 927281 (N.D. Ill. Jan. 20, 2006) (finding that defendant willfully failed to comply with FCRA on a classwide basis); *Bruce v. Keybank Nat'l Ass'n*, 2006 WL 2334846 (N.D. Ind. Aug. 7, 2006); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005); *White v. E-Loan*, 2006 U.S. Dist. LEXIS 62654 (N.D. Cal. Aug. 18, 2006).

On the issues presented in this case, the Court generally *must* assume that the allegations in the complaint are true for purposes of class certification, though "[i]t is appropriate to conduct controlled discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004) (quoting FED. R. CIV. P. 23 advisory committee's note to 2003 amendments).

*See also Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975), *cert. denied,* 429 U.S. 816 (1976); *Longden v. Sunderman*, 123 F.R.D. 547, 551 (N.D. Tex. 1988); *Keasler v. Natural Gas Pipeline Co. of Amer.*, 84 F.R.D. 364, 365 (E.D. Tex. 1979).  Such controlled discovery in this action confirms the Class allegations set forth in the Plaintiffs' Class Action Complaints (hereinafter "Complaints").

**A.    The Allegations of the Complaints**

This is a class action by consumers seeking relief from a practice that violates federal law and increases the risk of identity theft.  Stillmock Complaint at ¶ 1-2; Opacic Complaint at ¶ 1; and Barnstein Complaint at ¶ 1.

Patrick and Jeanne Stillmock, Leonid Opacic and Jenny Barnstein filed Complaints against Weis Markets[3] on May 21, 2007, May 29, 2007 and June 5, 2007, respectively.  The Complaints assert violations of section 1681c(g) of the FCRA, 15 U.S.C. §§ 1681 *et seq*., as amended by FACTA, resulting from Defendant's issuance of electronically printed receipts that contained the first six and last four digits of the Class members' plastic payment card number.  Stillmock Complaint at ¶ 7, 8, 23, 25, 42 and 44; Opacic Complaint at ¶ 1, 9, 12 and 15; and Barnstein Complaint at ¶¶ 1, 19 and 22.  Mr. and Mrs. Stillmock and Ms. Barnstein seek to represent a class of consumers who were provided an electronically printed receipt from a plastic payment card transaction at any Weis Markets store location that was in violation of FACTA.  Stillmock Complaint at ¶ 29; Barnstein Complaint at ¶ 25.  Mr. Opacic only seeks to represent a class of consumers who were provided an electronically printed receipt from a plastic payment card transaction at Weis Markets store number 186 located at 2305

---

[3] Weis Markets is a Pennsylvania Corporation which owns and operates grocery stores located throughout Maryland, New Jersey, West Virginia, Pennsylvania and New York trading under the names Weis Markets, Mr. Z's Super Markets, King's Super Markets and Scot's Lo-Cost.  Barnstein Complaint at ¶ 8.

Schoenersville Road, Bethlehem, Pennsylvania 18017 from December 4, 2006 to the present. Opacic Complaint at ¶ 15.

Weis Markets' uniform and illegal practice alleged in these cases is best illustrated through the circumstances of the named Plaintiffs, Patrick and Jeanne Stillmock, Leonid Opacic and Jenny Barnstein, who were each presented with electronically printed receipts at the point of sale by Weis Markets that contained the first six and last four digits of their plastic payment card account number. Opacic Complaint at ¶ 12; Barnstein Complaint at ¶ 22.  The named Plaintiffs transactions are typical of the Class that they seek to represent. Stillmock Complaint at ¶ 33; Opacic Complaint at ¶ 18; and Barnstein Complaint at ¶ 29.

1.      *Patrick and Jeanne Stillmock*

Patrick Stillmock is a 61 year old man who retired after completing twenty-four years of service with the Baltimore County Fire Department in Maryland.  Jeanne Stillmock is a 59 year old woman who works for the Baltimore County Public School System in Maryland as an Administrative Secretary.   On or about May 4, 2007, Mr. and Mrs. Stillmock purchased groceries from Weis Markets Store #123 located at 4126 East Joppa Road, Baltimore, MD 21236.  Stillmock Complaint at ¶ 11.  Mr. and Mrs. Stillmock used their joint plastic payment card to pay for their groceries.  *Id.*  Weis Markets issued a proof of purchase in the form of an electronically printed receipt to Mr. and Mrs. Stillmock that included both the first six and last four digits of their plastic payment card account number. *Id.*  True and correct copies of the receipts issued by Weis Markets to Mr. and Mrs. Stillmock are attached hereto as **Exhibit 2** ("Stillmock Receipts") (filed under seal).

2.      *Leonid Opacic*

Leonid Opacic is a 27 year old man who works in Allentown, Pennsylvania as a installer

of granite and marble kitchen surfaces and at Eastern Services.  On or about March 23, 2007, Mr. Opacic purchased groceries from Weis Markets Store #186 located at 2305 Schoenersville Road, Bethlehem, PA 18017.  Opacic Complaint at ¶¶ 12 and 15.  Mr. Opacic used his plastic payment card to pay for his groceries.  *Id.* at ¶ 12.  Weis Markets issued a proof of purchase in the form of an electronically printed receipt to Mr. Opacic that included both the first six and last four digits of his plastic payment card account number. *Id.*  A true and correct copy of the receipt issued by Weis Markets to Mr. Opacic is attached hereto as **Exhibit 3** ("Opacic Receipt") (filed under seal).

      *3.*      *Jenny Barnstein*

Jenny Barnstein is a 52 year old woman who works in Reisterstown, Maryland as an administrative assistant at a school for children with special needs.  On or about May 9, 2007, Ms. Barnstein purchased groceries from Weis Markets Store #128 located at 2205 Hanover Pike, Hampstead, MD 21074.  Barnstein Complaint at ¶ 22.  Ms. Barnstein used her plastic payment card to pay for her groceries.  *Id.*  Weis Markets issued a proof of purchase in the form of an electronically printed receipt to Ms. Barnstein that included both the first six and last four digits of her plastic payment card account number.  *Id.*  True and correct copies of the receipts issued by Weis Markets to Ms. Barnstein are attached hereto as **Exhibit 4** ("Barnstein Receipts") (filed under seal).

Named Plaintiffs allege in their Class Action Complaints that even though Weis Markets had (1) a three year cushion to prepare and comply with FACTA's truncation provision; (2) knowledge of the truncation provision and FACTA as a whole; (3) the repeated reminders of FACTA and its accompanying provisions from credit card issuers, third-party processors and trade organizations; and (4) the actions of Defendant's peers and competitors, Defendant, after

- 6 -

FACTA's effective date, nevertheless issued electronically printed receipts at the point of sale which did not comply with the law.  Stillmock Complaint at ¶¶ 24-28; Opacic Complaint at ¶¶ 1, 8-9 and 29-31; and Barnstein Complaint at ¶¶ 1, 12, 17-21, 42-47.  Named Plaintiffs further allege that by electronically printing receipts which did not comply with FACTA, Defendant's actions constituted deliberate, willful, intentional, and reckless conduct in violation of FACTA. Stillmock Complaint at ¶¶ 23-28; Opacic Complaint at ¶¶ 10 and 32; and Barnstein Complaint at ¶¶ 47-48.

As a direct result of the Defendant's illegal acts, named Plaintiffs allege that they and the Class were damaged. Stillmock Complaint at ¶¶ 8 and 48; Opacic Complaint at ¶¶ 1, 11 and 33; and Barnstein Complaint at ¶¶ 47-48.  This lawsuit also asserts that this practice was not isolated or particular to named Plaintiffs, but was uniform, consistent, and repeated over-and-over again.  Stillmock Complaint at ¶¶ 1, 8, 23, 29, 31, 42 and 47; Opacic Complaint at ¶¶ 1, 9, 10, 15-19; 28 and 32; and Barnstein Complaint at ¶¶ 4, 19, 20, 27, 42, and 43.  In fact, Weis Markets printed the first six and last four digits of its customers plastic payment card account numbers in every plastic payment card transaction during the Class period, which number in the thousands. **Exhibits 2**, **3** and **4**.

The practice in this case is virtually identical, in both scope and allegations, to other FACTA cases that have come before other courts in the past two years that were certified as class actions after contested class certification briefing.  *Cicilline v. Jewel Food Stores, Inc.*, No. 07-2333 (N.D. Ill.) (certified on Mar. 31, 2008) (certifying FACTA class) (Order dated Mar. 31, 2008 attached hereto as **Exhibit 5)**; *Harris v. Circuit City Stores, Inc.*, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008) (same); *Kesler v. IKEA U.S., Inc.*, 2008 WL 413268 (C.D. Cal. Feb. 4, 2008) (same); *Troy v. Red Lantern Inn, Inc.*, 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007) (same);

*Halperin v. Interpark, Inc.*, 2007 WL 4219419 (N.D. Ill. Nov. 29, 2007) (same); *Reynoso v. South County Concepts, Inc.*, 2007 WL 4922524 (C.D. Cal. Oct. 26, 2007) (same); *Medrano v. WCG Holdings, Inc.*, 2007 WL 4922525 (C.D. Cal. Oct. 26, 2007) (same).[4]

      **B.**      **Identity Theft is the Fastest Growing Crime in the United States**

Identity theft is one of the fastest-growing crimes in the United States.  Stillmock Complaint at ¶ 3.  The Department of Justice – Bureau of Justice Statistics determined that over 7 million individuals were victims of identity theft in the year 2004.  Barnstein Complaint at ¶ 9.  The number of individuals claiming to have been victimized in 2006 has soared to 8.4 million.  The Federal Trade Commission now estimates that over nine million Americans have their identities stolen each year.  Stillmock Complaint at ¶ 3; Barnstein Complaint at ¶ 9.  The cost of identity theft to individuals and businesses exceeds 50 billion dollars a year.  Barnstein Complaint at ¶ 10.  Identity theft costs consumers well over 5 billion dollars a year in out of pocket expenses.  It takes the average consumer 300 hours to restore their good name after becoming aware that they were victimized by identity theft.  Press Release, Stevens ID Theft Prevention Act Passes Commerce Committee, States News Service (Apr. 25, 2007) (attached hereto as **Exhibit 6**).

There are many ways a criminal can steal an individual's identity.  But even in the age of technology, the most popular and common method of identity theft remains low-tech –

---

[4] FACTA cases that have been certified for purposes of settlement include: *Ehrheart v. Lifetime Brands, Inc.*, No. 07-01433 (E.D. Pa.) (final approval Order dated Jun. 5, 2008 attached hereto as **Exhibit 7**); *Goldin v. Uni-Marts, LLC*, No. 07-0666 (W.D. Pa.) (final approval Order dated May 6, 2008 attached hereto as **Exhibit 8**); *Palamara v. King's Family Restaurant*, No. 07-317 (W.D. Pa.) (final approval Order dated Apr. 22, 2008 attached hereto as **Exhibit 9**); *Reed v. Whole Enchilada, Inc.*, No. 2:07-00357 (W.D. Pa.) (final approval Order dated Mar. 21, 2008 attached hereto as **Exhibit 10**); *Ehrheart v. Pro Image Franchise, LLC*, No. 07-0447 (W.D. Pa.) (final approval Order dated Jan. 3, 2008 attached hereto as **Exhibit 11**); *Sinatra v. Coventry Restaurant Systems, Inc.*, No. 07-0445 (W.D. Pa.) (final approval Order dated Nov. 15, 2007 attached hereto as **Exhibit 12**); *Pivarnik v. Lamrite West, Inc.*, No. 07-00321 (W.D. Pa.) (final approval Order dated Nov. 9, 2007 attached hereto as **Exhibit 13**); *Klingensmith v. Max & Erma's Restaurants, Inc.*, No. 07-0318, 2007 WL 3118505 (W.D. Pa.Oct. 23, 2007) attached hereto as **Exhibit 14**).

"dumpster diving."   Robin Sidel, *Identity Theft—Unplugged—Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way*, Wall Street Journal B1 (October 8, 2005) (hereinafter "Wall Street Journal Article") (stating that "29% of victims surveyed said their personal information was obtained through a lost or stolen wallet, checkbook or credit card . . . [and] the bulk of the rest were attributed to [other low-tech means including] Dumpster-diving") (attached hereto as **Exhibit 15**).   "Dumpster Diving" is also sometimes referred to as "trashing." Stillmock Complaint at ¶ 17. "Dumpster Diving" or "trashing" is the practice of retrieving documents – including credit card receipts – from unprotected trash receptacles. Stillmock Complaint at ¶¶ 4 and 17; Barnstein Complaint at ¶ 11.

The Federal Trade Commission Bureau of Consumer Protection recently published an alert stating that a debit or credit card receipt containing more than the last five digits of an account number is a "'golden ticket' for fraudsters and identity thieves."   Federal Trade Commission Bureau of Consumer Protection Division of Consumer & Business Education, *Slip Showing?   Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts* (May 2007) (containing an example of a properly printed electronic receipt under FACTA) (Exhibit 16).   Due to this high risk of identity theft caused by printing too much information on personal financial statements and credit and debit card receipts, banks and other financial institutions are urging their customers to shred all credit and debit card receipts.   Wall Street Journal Article (**Exhibit 15**).   Congress enacted FACTA to provide consumers with an additional safeguard against identity theft  – the truncation of the expiration date and the first eleven digits of a plastic payment card account number from electronically printed receipts.   If merchants followed FACTA's truncation requirement, there would be no need to shred receipts or worry about losing or having receipts stolen.

**C.      Each Digit in a Plastic Payment Card Account Number Has Significance and is Valuable to Identity Thieves**

Requiring businesses to truncate consumers credit and debit card account numbers, with the exception of the last five digits, was a well thought out decision and an important piece of consumer protection because the first six digits of a credit or debit card number discloses a tremendous amount of information about the card to a potential identity thief.   Barnstein Complaint at ¶ 14.   For instance, the first digit of a card always discloses the issuer of the card (i.e. Visa will always begin with a 4; MasterCard will always begin with a 5; Discover Card will always begin with a 6; and American Express will always begin with a 34 or 37). *See* Barnstein Complaint at ¶ 15; International Standards Organization (ISO/IEC 7812-1:1993) and American National Standards Institute (ANSI X4.13).   The second through sixth digits of a card number always discloses the issuing bank's routing number.   Barnstein Complaint at ¶ 17.   Disclosure of either of these pieces of confidential personal financial information heightens the risk of identity theft by directing a potential identity thief to the source of the funds with information that would be otherwise unattainable.

**D.      FACTA Was Enacted, in part, to Stem the Tide of Identity Theft**

In part due to the astronomical rise in identity theft, on December 4, 2003, Congress passed FACTA to prevent identity theft (specifically, credit and debit card fraud).   One FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's plastic payment card account number from a receipt which the consumer discarded or lost.[5]   Codified at 15 U.S.C. § 1681c(g) ("Receipt Provision"), this

---

[5] The Committee on Banking, Housing, and Urban Affairs found that printing a consumer's entire credit card account number on a merchandise receipt "is an excellent way for thieves to gather information and enjoy a shopping spree at your expense."  S. Hrg. No. 108-579 at 180 (May 20, June 19, 26, July 10, 29, and 31, 2003).

provision provides as follows:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions.  15 U.S.C. §1681c(g)(3).[6]

Congress made the determination that exposing *anything more than the last five digits of the credit or debit card account number on a printed receipt would result in an increased risk of*

---

[6] Prior to FACTA, many states, including Maryland, had already enacted laws requiring the truncation of account numbers on printed receipts.  *See* MD. CODE ANN., COMM. LAW § 14-1318 (effective Oct. 1, 2002 for existing merchants and Jan. 1, 2006 for new merchants).  In fact, fifteen states required merchants to truncate account numbers on printed receipts prior to the time FACTA was enacted.  *See* http://www.globalpaymentsinc.com/myglobal/industry_initiatives/card_transaction_requir.html (last visited Feb. 20, 2008).  These laws are an indication of the seriousness of identity theft, the importance of consumer plastic payment card account information, and the need to combat the fastest growing crime in America.

Moreover, in anticipation of the January 1, 2005 and December 4, 2006 deadlines, many credit card companies and third-party processors, including but not limited to VISA and MasterCard, advised merchants of the need for compliance with the Receipt Provision.  Barnstein Complaint at ¶¶ 45-47.  Additionally, VISA and MasterCard implemented truncation policies well in advance of FACTA's effective date, as early as July 2003, to ensure compliance with the Receipt Provision.  Barnstein Complaint at ¶¶ 45-47.  *See also* Rules for Visa Merchants: Card Acceptance and Chargeback Management Guidelines p. 62 (2006) (attached hereto as **Exhibit 17**); Rules for Visa Merchants: Card Acceptance and Chargeback Management Guidelines" p. 62 (2007) (attached hereto as **Exhibit 18**).  In a press release leading up to the Visa truncation policy, Visa held a press conference in which Visa USA CEO Carl Pascaella stated:

> Today I am proud to announce an additional measure to combat identity theft and protect consumers.  Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts.  The card's expiration date will be eliminated from receipts altogether.  This is an added security measure for consumers that doesn't require any action by the cardholder.
>
> *            *            *
>
> Receipt truncation is good news for consumers, and bad news for identity thieves.  Identity thieves thrive on discarded receipts and documents containing consumers' information such as payment account numbers[.]  Visa's new policy will protect consumers by limiting the information these thieves can access.

Press Release, Visa USA, Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein, P.R. Newswire (March 6, 2003) (attached hereto as **Exhibit 19**).

*identity theft.*[7]  FACTA was enacted to make retailers stop the practice of printing this personal

and confidential financial information on receipts.

For example, the Senate Committee on Banking, Housing, and Urban Affairs, expressly

stated as much in its report to the Senate entitled "Amending Fair Credit Reporting Act":

> [FACTA] contains numerous measures which protect consumers
> from identity thieves.  The legislation requires the truncation of
> credit and debit card account numbers on electronically printed
> receipts to prevent criminals from obtaining easy access to such
> key information.
>
> *        *        *
>
> The Committee included th[e truncation of credit and debit card
> account numbers provision] to limit the number of opportunities
> for identity thieves to "pick off" key card account information.

S. Rep. No. 108-166 at 3 and 13 (Oct. 17, 2003).

FACTA gave companies that had existing Devices in place prior to December 4, 2003, a

generous three-year transition period to comply with the Receipt Provision.   15 U.S.C.

§1681c(g)(3).[8]  FACTA also required immediate compliance by all Devices put to use on or

---

[7] Moreover, this uniform practice for truncating consumer plastic payment card receipts ("no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number"), eliminates the possibility for a potential identity theft that would have arisen under a similar but less productive measure requiring only that merchants truncate plastic payment card receipts down to *any 5 digits*.  If a merchant were able to truncate down to *any five digits*, the possibility would remain that a series of receipts from different merchants stolen from a garbage bin and taken together would include every digit of a plastic payment card number.  The reason that Congress chose to eliminate the first ten digits of the account number under FACTA was explained in detail above in Section I(c) ("Each Digit in a Plastic Payment Card Account Number Has Significance and is Valuable to Identity Thieves").

[8] 15 U.S.C. §1681c(g)(3) became effective:

(A) 3 years after the date of enactment of this subsection [December 4, 2003], with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and (B) 1 year after the date of enactment of this subsection [December 4, 2003], with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

after January 1, 2005.[9]  *Id.*

To be liable under FACTA in accordance with the allegations of the Complaints, Weis Markets must have: 1) willfully;[10] 2) issued an electronically printed receipt, which included more than the last five digits of the credit or debit card account number;[11] 3) after FACTA's effective date.  A consumer can recover not less than $100 and not more than $1,000 in statutory damages for a willful FACTA violation.  15 U.S.C. § 1681n.

### E.      Discovery Confirms that the Class is Not Limited to Named Plaintiffs

Mr. and Mrs. Stillmock, Mr. Opacic and Ms. Barnstein's experiences with Weis Markets were neither unique nor isolated.  Weis Markets concedes that it had done nothing to comply with FACTA prior to this litigation.  Deposition of Frank Simpson ("Simpson Depo") at 9 ("Until we discovered that we were being litigated against, we had not done anything.") (attached hereto as **Exhibit 20**) (portions filed under seal).  Weis Markets further admits that

---

[9] FACTA's phase in periods, three years for existing equipment and one year for new equipment, were "designed to give merchants a reasonable opportunity to come into compliance with [the Receipt Provision]."  S. Rep. No. 108-166 at 13 (Oct. 17, 2003).

[10] Under the FCRA and FACTA, a willful violation occurs when a defendant "knowingly and intentionally performs an act that violated FCRA, either knowing that the action violates the rights of consumers or in reckless disregard of those rights."  *Safeco Insurance Co. of America v. Burr*, 127 S. Ct. 2201, 2209 (2007).

[11] Congress recently amended FACTA with The Credit and Debit Card Receipt Clarification Act of 2007, PL 110-241, 122 Stat. 1565 (2008) (hereinafter "Clarification Act").  The Clarification Act added the following language to 15 U.S.C. § 1681n ("Civil liability for willful noncompliance"):

> (d) CLARIFICATION OF WILLFUL NONCOMPLIANCE.—For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt.

Congress amended the FCRA to limit liability only to the extent that a claim was alleging an expiration date violation under FACTA between December 4, 2004 and the date the Clarification Act was enacted.  In other words, any allegation regarding the failure to truncate the plastic payment card account number down to the last five digits remains unchanged by the Clarification Act.  Accordingly, because each named Plaintiff alleged that Weis Markets printed at least the first six and last four digits of each plastic payment card account number on electronically printed receipts, the Clarification Act has no effect on Weis Market's potential liability in this matter.

prior to June 2007, Weis Markets was never in compliance with FACTA. Defendant's Answers and Objections to Plaintiffs' First Set of Interrogatories Answer No. 5 and 7 (Opacic) (attached hereto as **Exhibit 21**).   Moreover, Weis Markets further admits that *every* receipt printed at *every* Weis Markets location during the class period as a result of a plastic payment card transaction contained the first six digits and last four digits of the plastic payment card account number:

> Q.  Okay.  Prior to that period when changes were made by the vendors and your distribution to the stores, am I correct that the receipts printed at the Weis stores for a credit or a debit transaction included the first six digits and the last four digits of the account number?
>
> A.  Yes, I believe so.
>
> Q.  And was that consistent for all the stores in the Weis chain?
>
> A.  Yes, it was.
>
> Q.  And was it different between a debit or a credit transaction?
>
> A.  Not the number printing.

Simpson Depo at 12.

> Q.  Is there any difference in the number of digits in the account number that printed based on the store's name?
>
> A.  No.
>
> Q.  Okay.  Was there any difference prior to [] that period when you were making changes to what's printed on the receipt, was there any difference in the number of digits of the account number printed based on the type of card, either Visa, MasterCard, American Express or?
>
> A.  No.
>
> Q.  Was there any difference in the number of digits printed from store to store?
>
> A.  No.

*Id.* at 15.

- 14 -

In response to discovery requests, Weis Markets disclosed that there were 16,543,635 plastic payment card transactions during the Class period in which an electronically printed receipt was issued to a consumer.  *See* Defendant's Answers and Objections to Plaintiffs' First Set of Interrogatories Answer No. 4, 5 and Schedule E (Stillmock and Barnstein) (attached hereto as **Exhibit 22**); Simpson Depo at 13 (stating that each terminal at every Weis Markets location that accepts plastic payment cards as a payment method prints a receipt for the customer to take away).  In accordance with Weis Markets' discovery responses and deposition testimony, each of the 16,543,635 plastic payment card transactions qualifies as a class transaction.  It is noteworthy to mention that 16,543,635 plastic payment card transactions convert roughly into 286,090 – 339,732 class members.[12]

As Weis Markets has freely admitted, it has printed thousands of receipts for plastic payment card transactions that were identical to the named Plaintiffs' transactions in this respect – all contained too much personal financial information, and therefore in clear violation of FACTA.

## II.   THE COURT SHOULD CERTIFY THE CLASS IN THIS CASE

### A.   Governing Principles

---

[12] On average, consumers make between 1.6 – 1.9 trips to purchase groceries at a supermarket every week. U.S. Grocery Shopper Trends (Food Marketing Institute 2006) (attached hereto as **Exhibit 23**); News Release, New FMI Report Shows Food Retailers Using Technology to Remain Competitive and Meet Consumer Needs (April 22, 2008) (available at http://www.fmi.org/news_releases/index.cfm?fuseaction=mediatext&id=928) (last visited June 26, 2008).  These statistics are confirmed by the experience of named Plaintiffs the Stillmocks and Barnstein.  The Stillmocks produced 6 receipts from plastic payment card transactions from a Weis Markets location for the four week period between April 16, 2007 and May 13, 2007, which is the equivalent of 1.5 trips per week.  *See* Stillmock Receipts (**Exhibit 2**).  Similarly, Barnstein produced 5 receipts from plastic payment card purchases from a Weis Markets location for the three week period between May 9, 2007 and May 29, 2007, which is the equivalent of 1.66 trips per week.  *See* Barnstein Receipts (**Exhibit 4**).

During the Class period, Weis Markets conducted an average of 619,149 plastic payment card transactions per week. *See* Defendant's Answers and Objections to Plaintiffs' First Set of Interrogatories Answer No. 4, 5 and Schedule E (Stillmock and Barnstein) (**Exhibit 22**) (calculated from the plastic payment card transaction numbers produced by Weis Markets as Schedule E).  Because the average grocery store shopper conducts between 1.6 – 1.9 transactions per week, it can be assumed that the class membership total would fall somewhere in the range between 286,090 and 339,732.

1.      ***Rule 23 Favors Certification***

Many courts interpret RULE 23 to favor the maintenance of class actions.  *See e.g., In re Amerifirst Sec. Litig.,* 139 F.R.D. 423, 427 (S.D. Fla. 1991) ("the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action").  The reason to favor class certification is that class action lawsuits are **essential**, and often the only practical way, to enforce consumer protection laws:

> In a large and impersonal society, class actions are often the last barricade of consumer protection . . . .  To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups.  The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting.  The alternatives to the class action -- private suits or governmental actions – have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are not truly effective.  The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.

*Eshaghi v. Hanley Dawson Cadillac Co.*, 574 N.E. 2d 760, 764, 214 Ill. App. 3d 995 (Ill. 1991).

In *Mitchell-Tracey v. United General Title Insurance Co., et. al.,* 237 F.R.D. 551, 555 (D. Md. 2006), Judge Davis took this approach in a class action brought against two title insurers:

> Class certification is a useful tool which can economize and focus judicial resources by allowing the court to consolidate similar claims and provide consistent and conclusive final judgments. Class certification also allows claims that may not otherwise be brought, because bringing individual claims can be cost prohibitive when the remedy is either injunctive relief or small monetary damages.

*See also Arrington v. Colleen*, Inc., 2001 WL 34117734 * 1 (D. Md. Apr. 2, 2001).

Simple consumer cases such as this one are routinely certified as class actions by courts in Maryland and elsewhere.  The United States Supreme Court recently noted that cases involving consumer or securities fraud or violations of anti-trust laws are especially appropriate

for class action treatment. *Amchem Product, Inc. v. Windsor,* 521 U.S. 591, 625 (1997). *See also Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998) (certifying consumer class action against loan servicer); *Twyman v. Rockville Housing Auth.*, 99 F.R.D. 314 (D. Md. 1983) (class of more than 150 tenants in low-income public housing certified regarding Housing Authority involving rent, eviction, and maintenance); *Guarte v. Furniture Fair, Inc*, 75 F.R.D. 525 (D. Md. 1977) (class of furniture store customers certified regarding practices violating Truth-in-Lending Act); *Kohl v. Assoc. of Trial Lawyers of America*, 183 F.R.D. 475 (D. Md. 1998) (class of retirees certified alleging violation of ERISA).

### 2.   *This is the Very Type of Case for Which the Class Action Mechanism was Established*

This Court should find that the allegations against Weis Markets raise questions that can and should be resolved, once and for all, in a class action.  The legal and factual issues which will control resolution of this case for the named Plaintiffs and for all Class members are relatively simple and straightforward.  Indeed, this case does not present the complexity of anti-trust or other types of cases which are commonly certified as class actions.  *See, e.g., In Re A. H. Robbins Co., Inc.*, 880 F. 2d 709 (4th Cir.), *cert. denied*, 493 U.S. 959 (1989) (mass tort); *In Re Carbon Dioxide Anti-Trust Litigation*, 149 F.R.D. 229 (M.D. Fl. 1993); *Phillips Petroleum Company v. Shutts*, 472 U.S. 797 (1985) (securities fraud).

### B.   Legal Requirements for Certification

RULE 23 states that "at an early practicable time" the Court must determine whether to certify the case as a class action.  Four requirements for class certification are set forth in section (a) of the RULE.  If all four requirements are satisfied, the Court then looks to section (b) to determine whether any of three additional criteria is present.

The four requirements of RULE 23(a) are:

(1)     The class is so numerous that joinder of all members is impracticable,
(2)     There are questions of law or fact common to the class,
(3)     The claims or defenses of the representative parties are typical of the claims or defenses of the class, and,
(4)     The representative parties will fairly and adequately protect the interests of the class.

All four requirements of part (a) are met in this case.

### Rule 23(a)(1) – <u>Numerosity</u>

The focus of the numerosity requirement of RULE 23 is judicial economy. The RULE does not set out a precise numerical standard, but presents an impracticability of joinder requirement, of which class size is an inherent consideration. 1 H. NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2003); *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998).

Thus, class sizes of 30-40 members usually raise a presumption that the numerosity requirement is satisfied:

> Certainly, when the class is very large – for example, numbering in the hundreds – joinder will be impracticable; but in most cases the number that will, in itself, satisfy the Rule 23(a)(1) prerequisite should be much lower . . . .  In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23 (a)(1) on that fact alone.

1 H. NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2003).  *See also Peoples v. Wendover Funding*, 179 F.R.D. at 497 (noting that "[i]mpracticability refers only to difficulty, not impossibility"); *Dameron v. Sinai Hospital of Baltimore, Inc.*, 595 F. Supp. 1404, 1408 (D. Md. 1984).  Classes with as few as 18 members have been certified.  *See e.g. Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n.*, 375 F.2d 648 (4th Cir. 1967).  Plaintiff need not show the precise number of members in the class, *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983); *Folsum v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y. 1980),

because "a contrary rule would foreclose most class litigation . . . ."  1 H. NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2003).

    As noted above, the Defendant admits that it issued 16,543,635 electronically printed receipts that were in violation of FACTA during the applicable period of this lawsuit. Defendant's Answers and Objections to Plaintiffs' First Set of Interrogatories Answer No. 4, 5 and Schedule E (Stillmock and Barnstein) (**Exhibit 22**).  This total translates into roughly 286,090 – 339,732 Class members with transactions during the Class period.  In this circumstance, the numerosity prong of RULE 23 is undeniably satisfied.

**Rule 23(a)(2) – <u>Commonality of Issues</u>**

    RULE 23(a)(2) requires only that there be a single common question of law **<u>or</u>** fact in order for the court to certify the class action.  This case raises numerous questions of both law and fact which are common to the Class, which include the following:

      (a)     Whether the Defendant printed more than the last five digits of plastic payment card transaction receipts;

      (b)     Whether the Defendant willfully violated Section 1681c(g) of the FCRA by failing to provide consumers, who used their plastic payment cards in point of sale transactions with Defendant, with electronically printed receipts that complied with the Receipt Provision;

      (c)     Whether the Defendant willfully violated Section 1681c(g) of the FCRA by putting cash registers and or other Devices into place on or after January 1, 2005, that electronically printed receipts at the point of sale that failed to comply with the Receipt Provision;

      (d)     Whether the Defendant and its agents should be enjoined from further engaging in such improper conduct;

      (e)     the proper measure of statutory damages.

    "It is important to note that [Rule 23 (a)(2)] does not require that all questions of law and fact raised by the dispute be common . . . ."  C. WRIGHT AND A. MILLER, FEDERAL

PRACTICE AND PROCEDURES  § 1763 at 12681 (West 1994); *Arrington v. Colleen, Inc.*, 2001 WL 34117734, *3 (D. Md. Apr. 2, 2001).   In fact, a **single** common question has been deemed sufficient to satisfy the commonality requirement.   *Peoples*, 179 F.R.D. at 498 (holding that a single common issue is sufficient to satisfy commonality); *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 553 (S.D.N.Y. 1995) (*citing Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992).   "***Thus, factual differences among class members' cases will not preclude certification if the class members share the same legal theory***."   *Peoples,* 179 F.R.D. at 498 (*citing Brown v. Eckerd Drugs, Inc.,* 663 F.2d 1268, 1275 (4th Cir. 1981), *vacated on other grounds,* 457 U.S. 1128 (1982)) (emphasis added).

The pertinent factual and legal issues in this case clearly are common to the Class.  Here, the central common and unifying question applicable to the named Plaintiffs and all class members – whether the Defendant willfully violated Section 1681c(g) of the FCRA by providing consumers using plastic payment cards in point of sale transactions with electronically printed receipts that failed to comply with FACTA's truncation requirements during the applicable time period – is identical in all material respects.  Simpson Depo at 12 and 15 (stating that the first six and last four digits of the plastic payment card account number appeared on each Class member's electronically printed receipt regardless of the Weis Markets store location where the transaction took place, regardless of whether the transaction was processed as credit or debit and regardless of which bank issued the plastic payment card) (**Exhibit 20**).   *See also* Stillmock Receipts (**Exhibit 2**); Opacic Receipt (**Exhibit 3**); and Barnstein Receipts (**Exhibit 4**). Finally, Plaintiffs note that the assessment of damages in this case is straightforward and will be identical for each Class member.

Legal and factual questions will be viewed as commonly shared so long as "their

resolution does not depend on the facts of any class member's particular claims, but depends rather on the evidence presented taken as a whole." *Chapelle v. E.I. DuPont DeNemours & Co.*, 75 F.R.D. 74, 77 (E.D. Va. 1977). Weis Markets' practice of supplying customers with receipts that failed to truncate plastic payment card account numbers, as alleged in Plaintiffs' Complaints and admitted by Defendant during discovery, uniformly and adversely affected all putative Class members, without deviation.

The requirement of commonality is satisfied where, despite some minor factual differences, the question of law linking the class is substantially related to the resolution of the litigation (*i.e.* all class members' rights were violated and relief should be awarded). *Himmler v. Weinberger*, 422 F. Supp. 196, 199 (E.D. Mich. 1976), *rev'd on other grounds*, 611 F.2d 137 (6th Cir. 1979)(*citing American Finance System, Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974)); *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909 (9th Cir. 1964). In *American Finance System,* for example, several different subclasses with widely varied factual circumstances in relation to contract and period of employment brought a Title VII suit. Because the resolution of all claims depended on the resolution of unified legal questions, however, the requirement of commonality was satisfied. In the present case, not only are factual differences slight and irrelevant to the claims, uniform questions of law determine whether relief will be granted. The requirement of commonality is satisfied.

### Rule 23(a)(3) – <u>Typicality of Claims</u>

Each class member's claim is typical:

> [T]he typicality prerequisite of Rule 23(a) has been construed to require that the relief sought will benefit all class members and that no individual claim within the class be so unique as to impair the necessary alignment of interest. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)) . . . . [A] general course of conduct by the opposing party which affects the entire class to a same or similar degree, will substantiate the appropriateness of class action status. *Kaufman v. Lawrence*,

- 21 -

76 F.R.D. 397 (S.D.N.Y. 1977).

*Ramirez v. Webb*, 102 F.R.D. 968, 971 (W.D. Mich. 1984).

As stressed in *Peoples*, 179 F.R.D. at 498, "[t]he test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses."  Therefore, "while the claims of particular individuals may vary in detail from one to another, the collective claims focus on particular policies applicable to each class member thereby satisfying the typicality requirement of Rule 23 (a)."  *Briggs v. Brown & Williamson Tobacco Corp., Inc.*, 414 F. Supp. 371, 375 (E.D. Va. 1976).

The facts underlying named Plaintiffs' transactions are as straightforward as they are typical – each named Plaintiff made a purchase at a Weis Markets store with a plastic payment card received an electronically printed receipt at the point of sale. Because of Defendant's uniform protocols for printing receipts and Defendant's willful non-compliance with federal law, named Plaintiffs received electronically printed receipts containing the first six and last four digits of their plastic payment card account number.  *See* Section 1E (quoting Simpson Depo at 12 and 15 (**Exhibit 20**)).   Like all Class members, named Plaintiffs were legally entitled to receive a FACTA-compliant receipt that does not expose them to an elevated risk of identity theft;  like all Class members, however, named Plaintiffs received receipts that violated FACTA's truncation requirement.  Stillmock Receipts (**Exhibit 2**); Opacic Receipt (**Exhibit 3**); and Barnstein Receipts (**Exhibit 4**). The very legal issues raised in the Complaints are demonstrated through named Plaintiffs' transactions.

In this case, Plaintiffs' claims present virtually identical fact patterns (the electronically printed customer receipt showing the first six and last four digits of the consumer's plastic

payment card number) and legal theory (Weis Markets violated FACTA's truncation requirement) which each Class member would have to present if he or she filed an individual suit. The claim of every Class member, therefore, is based upon a common pattern of wrongdoing and conduct by Weis Markets.  Named Plaintiffs' claims are, therefore, not only typical of the claims of the Class, they are virtually identical.  *See Kohl v. Assoc. of Trial Lawyers of America*, 183 F.R.D. 475, 484 (D. Md. 1998).

**Rule 23(a)(4) – <u>Adequacy of Representation</u>**

The standards of RULE 23(a)(4) are met if it appears that the named plaintiff's interests are not antagonistic to those of other class members and the plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation.  *See e.g., Mitchell-Tracey*, 237 F.R.D. at 558; *Peoples,* 179 F.R.D. at 499; *Bogosian v. Golf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086 (1978); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011 (1975); *Brown v. Cameron-Brown*, 92 F.R.D. 32, 40-41 (E.D. Va. 1981).

The requirement of adequate representation is not a search for a perfect plaintiff with an unassailable claim.  The requirement merely assures that absent class members, who will be bound by the result, are protected by a vigorous and competent prosecution of the case by someone who shares their interests.  *See* 1 NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS § 3:21 (4th ed. 2003); *see also George v. Baltimore City Public Schools*, 117 F.R.D. 368, 371 (D. Md. 1987).  The Court needs to ensure "that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian*, 561 F.2d at 449.  The named Plaintiffs in this case have no claim or interest that conflict with those of the Class.  They have followed

this case diligently and have already given their depositions,[13] answered Interrogatories, and produced all available documents.  Deposition of Patrick Stillmock is attached hereto as **Exhibit 24**); Deposition of Jeanne Stillmock is attached hereto as **Exhibit 25**; Deposition of Jenny Barnstein is attached hereto as **Exhibit 26** (portions filed under seal).

Likewise, named Plaintiffs, the Class and sub-Class in this case are represented by competent and experienced counsel who have represented numerous classes in actions involving consumer frauds and other legal violations.  As set forth in the attached Declaration of Lead Counsel for the Class (Attached hereto as **Exhibit 27**), Richard S. Gordon has served as counsel, and often lead counsel in more than 20 class actions, including cases in this Court.  Similarly, as set forth in the attached Declaration of Lead Counsel for the sub-Class (attached hereto as **Exhibit** 28), David A. Searles has served as counsel, and often lead counsel in many consumer class actions across the country.  Likewise, Martin E. Wolf, Cory L. Zajdel, Katherine B. Bornstein, Lisa Mellas, Robert K. Jenner, John J. Cord, Keith David Forman, James A. Francis and Jason M. Rapa, each have substantial experience in consumer class action litigation.  A detailed list of Class Counsel's cases are set forth in Lead Counsels' Declarations.

### C.   A Class Action Is Appropriate Because the Criteria of Rule 23(b) Are Satisfied

After finding that all four requirements of RULE 23(a) have been met, the Court should certify the case as a class action *if any* one of three criteria in part (b) of the RULE is satisfied.  The allegations of the Complaints and discovery to date satisfy RULE 23(b)(2) and (b)(3).

---

[13] Weis Markets did not ask for Leonid Opacic's deposition at the same time it requested the other named Plaintiffs' depositions.  Weis Markets did, however, request to take Opacic's deposition prior to the date class certification discovery was scheduled to close.  Opacic is scheduled to be deposed on July 29, 2008.  Plaintiffs therefore reserve the right to file the Opacic deposition transcript as part of Plaintiffs' Class Certification Reply brief.

**Rule 23(b)(2)**

Weis Markets has uniformly and consistently violated Class members' rights by willfully printing the first six and last four digits of Class members' plastic payment card account number on electronically printed receipts in direct violation of federal law.  Plaintiffs seek equitable relief in the form of an injunction against any such activity in the future.  Section (b)(2) of the RULE states that a class action is maintainable where:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

*See also Mitchell-Tracey*, 237 F.R.D. at 559; *George v. Baltimore City Public Schools*, 117 F.R.D. 368, 372 (D. Md. 1987).  What is necessary for certification under part (b)(2) is that the challenged conduct by the defendant be premised on grounds that are applicable to the entire class.  *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (M.D. Ill. 1989).

In this case, Plaintiffs allege that Defendant engaged in unlawful activity that resulted in an elevated risk of identity theft that would not have existed had Weis Markets complied with federal law.  Through the use of standard receipt delivery protocols, Defendant has acted on grounds applicable to the Class as a whole.

RULE (b)(2) is appropriate here even though Plaintiffs seek monetary relief against Defendant.  In fact, the Court should approve RULE (b)(2) certification in this case because Plaintiffs' claim for an injunction for the Class provides the structural basis for which the other claims are presented.  Accordingly, the equitable relief sought by Plaintiffs and the Class goes to the essence of this case.  The fact that named Plaintiffs seek statutory damages does not exclude this case from treatment under subsection (b)(2), because the relief sought by Plaintiffs do not relate exclusively or predominately to monetary damages.  *Mitchell-Tracey*, 237 F.R.D.

at 559 (*citing Ramirez v. Webb*, 102 F.R.D. 968, 971 (W.D. Mich. 1984)).

### **Rule 23 (b)(3)**

Certification under Rule 23(b)(3) provides that a class action is maintainable where:

The court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudication of the controversy.

Class certification of Plaintiffs' claims is appropriate under RULE 23(b)(3) because key factual and legal issues regarding Defendant's liability predominate throughout the Class, and a class action is the superior method of adjudicating claims such as the present that involve relatively small monetary damages (between $100 and $1,000).  It is black letter law that in determining whether common issues predominate, the Court's inquiry should be directed primarily toward the issue of liability.  *See Bogosian v. Gulf Oil Corp.*, 561 F.2d at 456; *see also Snider v. Upjohn*, 115 F.R.D. at 541; *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 345 (E.D. Pa. 1976).  In sum, Defendant's liability hinges on its uniform and consistent store-wide practice of including the first six and last four digits of the consumer's plastic payment card account numbers on electronically printed receipts.  The case also focuses on whether the Defendant's protocols, guidelines, and oversight of its receipt delivery protocol, constitute a willful violation of FACTA's truncation requirements, thereby subjecting Defendant to liability for statutory damages. [14]

---

[14] The issue of willfulness will be determined on Defendant's truncation policy and practice, or the lack thereof.  Under the FCRA and FACTA, a willful violation occurs when a defendant "knowingly and intentionally performs an act that violated FCRA, either knowing that the action violates the rights of consumers or in reckless disregard of those rights."  *Safeco Insurance Co. of America v. Burr*, 127 S. Ct. 2201, 2209 (2007).  Therefore, "reckless disregard" of a requirement of the FCRA would qualify as a willful violation for purposes of FACTA.  Accordingly, Weis Markets would have acted willfully if it "knowingly and intentionally performs an act that violates FCRA, either knowing that the action violates the rights of consumers or in reckless disregard of those rights."

Once common questions of liability are resolved, all that remains is the mechanical act of computing the amount of damages suffered by each Class member.  *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  To be sure, a common damage inquiry also predominates in this action, rendering it similarly well suited for class-wide resolution because every Class member seeks the same quantum of statutory damages which is dependent upon proof of Defendant's willful noncompliance with FACTA's truncation requirement.  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 522 (S.D.N.Y. 1996); *see also, In re Prudential Insur. Sales Practices Litig.*, 962 F. Supp. at 450, 516 (D.N.J. 1997

As this Court has stressed: "Generally, certification under this Rule is appropriate when settling the parties' differences in a single proceeding serves their interests by achieving 'economies of time, effort, and expense,' and by promoting uniformity of decisions as to similarly situated class members without sacrificing fairness." *Peoples,* 179 F.R.D. at 501 (quoting *Amchem Product, Inc. v. Windsor,* 521 U.S. 591, 615 (1997)).  As the United States Supreme Court recognized in *Amchem Product,* 521 U.S. at 625:

> Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.

---

The first prong is undisputed.  The act that violated FACTA was Defendant's printing electronic receipts that contained the first six and last four digits of plastic payment card account numbers.  Clearly, printing receipts is not some inadvertent act.  The second prong – state of mind – requires that Defendant knew its receipt-printing practice was illegal (because, for example, it knew the requirements of FACTA but did not update its registers to comply with those requirements) **or** that Defendant recklessly disregarded whether it was violating the law in its everyday practice of printing illegal receipts.

There has been virtually no class certification discovery between the parties to date regarding Weis Markets willfulness in this matter because Weis Markets has consistently objected on the grounds that willfulness is merits discovery and unrelated to class certification.  *See* Defendant's Answers and Objections to Plaintiffs' First Set of Interrogatories at General Objection 6 and Answers No. 8 - 12 and 14 - 19  (Stillmock and Barnstein) (attached hereto as **Exhibit 22**).  Plaintiffs have not challenged this position but do note for the Court that it would be bordering on unethical for Defendant to now contend that proving willfulness could be grounds for denying class certification.  Nonetheless, proof that Weis Markets actions were willful would require common proof from one class member to another and that proof would not vary from transaction to transaction.  Plaintiffs alleged, and intend to prove, that Defendant knew its conduct violated FACTA or, alternatively, that Defendant recklessly disregarded customers' rights under FACTA.

In fact, as noted above, the common questions of law and fact are virtually the ***only*** issues in this case.

In *Arrington v. Colleen, Inc.*, 2001 WL 34117734 (D. Md. Apr. 2, 2001), this Court, in certifying a consumer class alleging TILA violations, wrote that:

> In determining whether a class satisfies the requirement of Rule 23(b)(3), a court should consider: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

*See also Mitchell-Tracey*, 237 F.R.D. at 559 (same).

Based upon this analysis, it is clear that certification is appropriate. First, it is unlikely that an individual plaintiff would have the resources to pursue a claim – especially since any individual claim is only worth between one hundred and one thousand dollars. As one court has noted:

> This is precisely the kind of case that class actions were designed for, with small or statutory damages brought by impecunious plaintiffs who allege similar mistreatment by a comparatively powerful defendant, one that, if the facts alleged were proved, otherwise might get away with piecemeal highway robbery by committing many small violations that were not worth the time and effort of individual plaintiffs to redress or were beyond their ability or resources to remedy.

*Jackson v. Check'N Go of Illinois, Inc.*, 193 F.R.D. 544, 547 (N.D. Ill. 2000). Second, Plaintiffs are not aware of any other similar non-class litigation commenced by any putative Class member against Weis Markets for FACTA violations. Third, judicial resources are economized and focused by handling this case as a class action. *Mitchell-Tracey*, 237 F.R.D. at 560; *Arrington*, 2001 WL 34117734 at *8. Indeed, unless Class members obtain relief through this class action, most will likely obtain no relief at all. There simply is no other practical means for

this Class to challenge a practice which stands in clear violation of federal law. "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public." 6 H. NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS § 21:30 (4th ed. 2003). Alternatively, in the unlikely event that Class members become aware of their rights and are able to locate counsel, this would result in a multiplicity of scattered suits resulting in the inefficient administration of litigation.

Finally, there are no manageability issues that would preclude certification, even though the proposed Class could include over sixteen million transactions and thousands of Class members. The issue of "manageability" was recently discussed in *In Re: Visa Check/Master Money Antitrust Litigation*, 280 F.3d 124 (2nd Cir. 2001), *cert. denied*, 122 U.S. 2382 (2002). In that case, the Second Circuit affirmed the certification of a class which consisted of every business in the United States, large and small, which accepted Visa and/or MasterCard credit cards. The class literally consisted of millions of businesses in all of the fifty states ranging in size from Wal-Mart to the local dry cleaner. The defendants' major challenge on appeal was on manageability. The Second Circuit first disposed of defendants' argument that individualized proof of damages should preclude certification, saying that "the fact that there may have to be individual examinations on the issue of damages has never been held, however, a bar to class actions." *Id.* at 139. On the general issue of manageability, the Court stated that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored, and should be the exception rather than the rule." *Id.* at 140 (citations omitted).

In this case, there are no management issues with respect to the Classes as defined

above.  Most Class members can be identified from Defendant's own computerized records.  Weis Markets testified in this case that it compiles comprehensive and detailed *electronic* information for each and every purchase transaction.  This is especially significant with respect to Weis Markets Club Card Member transactions.[15]  As noted by Mr. Simpson, Weis Markets maintains electronic information for every Weis Markets Club Card transaction that can identify the date a Club Card Member conducted a transaction, from which store the transaction took place, the type of payment method used in the transaction and the identity of the Club Card Member.  Simpson Depo. at 23-4 and 30-1.[16]  Because Weis Markets readily admits that every plastic payment card transaction receipt from January 1, 2005 through June 6, 2007 included the first six and last four digits of the plastic payment card number used, a significant number of Class members will be easy to identify.

As a result, delivery of any notice under RULE 23(c)(2) to a majority of the Class will not be unduly difficult; nor are there other manageability issues that will hamper the

---

[15] Weis Markets promotes and its customers actively participate in the Loyalty Club Card Program.  Simpson Depo at 23.  Loyalty Club Card Programs were put into place to "help the retailer understand their current customers and create tailored marketing programs that grow revenues and build affinity."  John Chesak and Jim Dippold, *Frequent Doesn't Mean Loyal: Using Segmentation Marketing to Build Shopper Loyalty* (Nielsen Trends & Insights 2004) (available at http://www2.acnielsen.com/pubs/2004_q1_ci_frequent.shtml) (last visited June 20, 2008).  Weis Markets collects information from each Club Card transaction and uses the information collected to market to its Club Card members, to determine shopping trends at its retail locations and to sell this information to third-parties.  *See* Deposition of William ("Mills Depo") at 55-56 (attached hereto as **Exhibit 29**).

Grocery Trade organizations have conducted studies finding that between 80% – 90% of all shoppers at grocery store locations that offer a loyalty card program obtain the loyalty card.  *Id.* (80% in 2004); News Release, New FMI Report Shows Food Retailers Using Technology to Remain Competitive and Meet Consumer Needs (April 22, 2008) (available at http://www.fmi.org/news_releases/index.cfm?fuseaction=mediatext&id=928) (last visited June 26, 2008) (90% in 2008).  Furthermore, "[s]ome food retailers find that as much as 95 percent of their sales go to members of loyalty programs."  FMI Backgrounder, Loyalty-Marketing Programs In the Retail Food Industry (attached hereto as **Exhibit 30**).  With these statistics in place – much of which was gathered by grocery store trade groups of which Weis Markets is a member and an active participant – Plaintiffs believe that they will be able to identify and give individual mailed notice to somewhere between 80 – 95% of the Class in this matter.  *See* Mills Depo at 41 (stating that Norman Rich. President, sits on the board of directors for the Food Marketing Institute) (attached hereto as **Exhibit 29**).

[16] Mr. Simpson did state, however, that in some limited instances Weis Markets will have a Club Card Member's name but not the member's address.  Simpson Depo at 23-4.

management of this case as a class action.

Recognizing that consumer class actions in general are easy to manage, and understanding that in the absence of a class action, a failure of justice will result, numerous courts have found the class action approach superior in similar cases, and virtually identical cases, involving claims under consumer protection statutes including FCRA and FACTA. *See, e.g., Farrow v. Capital One Auto Finance, Inc., No.*, CCB-06-2324 (D. Md.) (certifying FCRA class action) (Order dated May 18, 2007 attached hereto as **Exhibit 1**); *Mitchell-Tracey*, 237 F.R.D. at 560; *Peoples*, 179 F.R.D. 492 (class of consumers whose rights under the Fair Debt Collection Practices Act were violated); *Williams v. LexisNexis Risk Management, Inc.*, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) (certifying FCRA class action); *Chisolm v. TranSouth Financial Corp.*, 184 F.R.D. 556, 562-63 (E.D. Va. 1999) (certifying consumer class against finance company); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) (certifying FCRA class action); *Cicilline v. Jewel Food Stores, Inc.*, No. 07-2333 (N.D. Ill.) (certified on Mar. 31, 2008) (certifying FACTA class) (Order dated Mar. 31, 2008 attached hereto as **Exhibit 5**); *Harris v. Circuit City Stores, Inc.*, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008) (same); *Kesler v. IKEA U.S., Inc.*, 2008 WL 413268 (C.D. Cal. Feb. 4, 2008) (same); *Troy v. Red Lantern Inn, Inc.*, 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007) (same); *Halperin v. Interpark, Inc.*, 2007 WL 4219419 (N.D. Ill. Nov. 29, 2007) (same); *Reynoso v. South County Concepts, Inc.*, 2007 WL 4922524 (C.D. Cal. Oct. 26, 2007) (same); *Medrano v. WCG Holdings, Inc.*, 2007 WL 4922525 (C.D. Cal. Oct. 26, 2007) (same).

In fact, courts have long recognized that "[c]lass action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'" *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980). Not only does class certification

enable class members to share in a financial recovery which they might otherwise never pursue on their own behalf, but it also "provides an opportunity to educate a segment of the public, those included in the class, of the obligations which creditors owe to them as credit consumers." *Id.*

Accordingly, this class action is both manageable and far superior to that of individual claims.

## III.     CONCLUSION

This case raises important factual and legal issues for thousands of consumers, issues which are common to all. Named Plaintiffs share all of these claims and are committed to bringing them forward to a resolution on behalf of all Class members.   The only practical method for adjudicating this case is through class certification.   The Court should certify the Classes as proposed.

Respectfully submitted,


Dated: July 25, 2008                                     _____/s/_____
                                                         Richard S. Gordon  Federal Bar No. 06882
                                                         Martin E. Wolf Federal Bar No. 09425
                                                         Cory L. Zajdel  Federal Bar No. 28191
                                                         QUINN, GORDON & WOLF, CHTD.
                                                         102 W. Pennsylvania Avenue
                                                         Suite 402
                                                         Towson, Maryland 21204
                                                         Telephone: (410) 825-2300
                                                         Facsimile:   (410) 825-0066

                                                         Katherine B. Bornstein (Bar No. 28460)
                                                         Lisa Mellas
                                                         SCHIFFRIN BARROWAY TOPAZ
                                                           & KESSLER, LLP
                                                         280 King of Prussia Road
                                                         Radnor, Pennsylvania 19087
                                                         Telephone: (610) 667-7706
                                                         Facsimile:   (610) 667-7056

Robert K. Jenner (Bar No. 01465)
John J. Cord (Bar No. 16758)
Keith D. Forman (Bar No. 28349)
JANET JENNER & SUGGS, LLC
Woodholme Center
1829 Reisterstown Rd., Suite 320
Baltimore, MD  21208
Telephone:  (410) 653-3200

David A. Searles
DONOVAN SEARLES, LLC
145 Walnut Street, Suite 1100
Philadelphia, PA 19103
Telephone: (215) 732-6067
Facsimile:   (215) 732-8060

Jason M. Rapa, Esquire
RAPA LAW OFFICE, P.C.
141 S. 1ST STREET
Lehighton, PA 18235

James A. Francis, Esquire
FRANCIS & MAILMAN, P.C.
100 South Broad Street, 19th Floor
Philadelphia, PA 19100

**Attorneys for Plaintiffs**