## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

PATRICK AND JEANNE STILLMOCK,
individually and on behalf of all others
similarly situated,

                    Plaintiffs,

        v.

WEIS MARKETS, INC. and DOES 1-10

                    Defendants.

:      CLASS ACTION

NO. 1:07-cv-01342-MJG

---

JENNY BARNSTEIN,
on behalf of herself and all others
similarly situated,

                    Plaintiffs,

        v.

WEIS MARKETS, INC.

                    Defendant.

:      CLASS ACTION

NO. 1:07-cv-1466-MJG

---

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' CLASS CERTIFICATION MOTION

## TABLE OF CONTENTS

I.    INTRODUCTION ..........................................................................................1

II.   FACTS ..........................................................................................................2

    A.    Plaintiffs and Their Allegations ..........................................................2

        1.    Plaintiffs Patrick and Jeanne Stillmock .....................................2

        2.    Plaintiff Jenny Barnstein.............................................................3

        3.    Plaintiff Leonid Opacic...............................................................4

    B.    Weis Markets ......................................................................................4

III.  ARGUMENT................................................................................................5

    A.    Standards for Certifying a Class .........................................................5

    B.    The Proposed Class Cannot be Certified Under Rule 23(b)(2) ...........6

    C.    Plaintiffs Fail the Superiority and Predominance Tests of Rule 23(b)(3) ..............8

        1.    The Superiority Requirement is Not Met Where the Damages Sought Would Bring About Annihilating Results Unrelated to Any Actual Harm to the Purported Class..................................................................9

        2.    Certification Permits Attorneys To Abuse The Legal System .................14

        3.    FACTA Encourages Individuals to File Their Own Suits.........................16

        4.    Weis Markets' Immediate Compliance Eliminated The "Deterrence" Function of Class Treatment....................................................................17

    D.    Common Questions of Law or Fact Do Not Predominate Over Questions Affecting Individual Class Members....................................................19

        1.    "Degree of Willfulness" Must be Assessed on a Case-by-Case Basis ......19

        2.    Other Individual Factual Determinations Must Be Made.........................20

    E.    Class Treatment Would Not Be Manageable ........................................21

    F.    The Named Plaintiffs Fail to Satisfy the Rule 23(a) Requirement of Adequacy ...............................................................................................23

G.    FACTA's Statutory Penalty Provision, As Applied in a Class Action Context, is Unconstitutional ................................................................................................24

    1.    A Class Action Under FACTA Allows Statutory Penalties That Are Confiscatory and Totally Disproportionate to the Harm ...........................24

    2.    FACTA Unconstitutionally Mandates Double Damages Based on the Same Purported "Willful" Conduct ...........................................................26

    3.    FACTA's Statutory Penalty Provision is Unconstitutionally Vague When Applied in the Class Action Context...............................................27

IV.    CONCLUSION...............................................................................................................29

## TABLE OF AUTHORITIES

Page(s)

CASES

Adams v. Henderson,
   197 F.R.D. 162 (D. Md. 2000) ...............................................................7

Alsup v. Montgomery Ward & Co.,
   57 F.R.D. 89 (N.D. Cal. 1972)...............................................................13

Amchem Prods. Inc. v. Windsor,
   521 U.S. 591 (1997)...............................................................................9

Anderson v. Capital One Bank,
   224 F.R.D. 444 (W.D. Wis. 2004) .......................................................17

Azoiani v. Love's Travel Stops,
   No. EDCV 07-90 ODW (OPx), 2007 WL 4811627 (C.D. Cal. Dec. 18, 2007) ....... 10, 11-12

Bateman v. Am. Multi Cinema, Inc.,
   No. 2:07-cv-00171-FMC-AJWx, 2007 WL 4812282 (C.D. Cal. Oct. 31, 2007)..............10, 18

Bell v. Axicom Corp.,
   No. 06-485 (E.D. Ark. Oct. 3, 2006) ....................................................11

Blanco v. CEC Entertainment Concepts, L.P.,
   No. CV 07-0559 GPS (JWJx), 2008 WL 239658 (C.D. Cal. Jan. 10, 2008) ...................10, 16

BMW of North America v. Gore,
   517 U.S. 559 (1996)..........................................................................24-25

BUC Int'l Corp. v. International Yacht Council Ltd.,
   517 F.3d 1271 (11th Cir. 2008) ...........................................................26

Buford v. Am. Fin. Co.,
   333 F. Supp. 1243 (N.D. Ga. 1971).....................................................14

Campos v. Choicepoint, Inc.,
   237 F.R.D. 478 (N.D. Ga. 2006) .........................................................17

Carson v. Giant Food, Inc.,
   187 F. Supp. 2d 462 (D. Md. 2002).......................................................7

Dister v. Apple-Bay East, Inc.,
   No. C 07-01377 SBA, 2008 WL 62280 (N.D. Cal. Jan. 4, 2008) ...........................10

Evans v. U-Haul Co. of Cal., No. CV 07-2097-JFW (JCx),
    2007 U.S. Dist. LEXIS 82026 (C.D. Cal. Aug. 14, 2007).....................................10, 15, 17, 20

Fendler v. Westgate-California Corp.,
    527 F.2d 1168 (9th Cir. 1975) ..........................................................................................23

Forbes v. Wells Fargo Bank, N.A.,
    420 F. Supp. 2d 1018 (D. Minn. 2006).............................................................................11

General Tel. Co. of Southwest v. Falcon,
    457 U.S. 147 (1982)............................................................................................................5

Giordano v. Wachovia Sec., LLC,
    Civ. No. 06-476 (JBS), 2006 WL 2177036 (D. N.J. July 31, 2006) ................................11

Grimes v. Rave Motion Pictures Birmingham, L.L.C.,
    552 F. Supp. 2d 1302 (N.D. Ala. 2008).........................................................................25-27

Guin v. Brazos Higher Ed. Serv. Corp., Inc.,
    No. Civ. 05-668 RHK/JSM, 2006 WL 288483 (D. Minn. Feb. 7, 2006) .........................11

In re Monumental Life Ins. Co.,
    365 F.3d 408 (5th Cir. 2004) ...............................................................................................6

In re Rhone-Poulenc Rorer, Inc.,
    51 F.3d 1293 (7th Cir. 1995) .............................................................................................15

Key v. DSW, Inc.,
    454 F. Supp. 2d 684 (S.D. Ohio 2006) .............................................................................11

Kline v. Coldwell Banker & Co.,
    508 F.2d 226 (9th Cir. 1974) .........................................................................................12, 13

London v. Wal-Mart Stores, Inc.,
    340 F.3d 1246 (11th Cir. 2003) ......................................................................................12, 13

Lopez v. KB Toys Retail, Inc., No. CV 07-144-JFW (CWx),
    2007 U.S. Dist. LEXIS 82025 (C.D. Cal. July 17, 2007)..................................................10

Maguire v. Sandy Mac, Inc.,
    145 F.R.D. 50 (D. N.J. 1992)............................................................................................17

Mathews v. Book-of-the-Month-Club, Inc.,
    62 F.R.D. 479 (N.D. Cal. 1974)........................................................................................17

Medrano v. Modern Parking Inc., No. CV 07-2949 PA (AGRx),
    2007 U.S. Dist. LEXIS 82024 (C.D. Cal. Sept. 17, 2007) ................................10, 21

Moon v. Fedex Kinko's Office & Print Servs., Inc.,
    No. C 06-07657-SI, 2007 WL 3022242 (N.D. Cal. Oct. 15, 2007)........................10

Motisi v. United Air Lines, Inc.,
    No. 07-2948-FMC-FFMx (C.D. Cal. Jan. 8, 2008) ..................................................10

Murray v. GMAC Mort. Corp.,
    434 F.3d 948 (7th Cir. 2006) ..................................................................................13

Najarian v. Avis Rent A Car Sys. LLC, No. CV 07-588-RGK (Ex),
    2007 U.S. Dist. LEXIS 59932 (C.D. Cal. June 11, 2007) ....................10, 15, 16, 20

Najarian v. Charlotte Russe, Inc., No. CV 07-501-RGK (CTx),
    2007 U.S. Dist. LEXIS 59879 (C.D. Cal. June 12, 2007) ..........................10, 15, 18

Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    259 F.3d 154 (3d Cir. 2001) ....................................................................................15

Owner-Operator Independent Driver Ass'n, Inc. v. Usis Commercial Services, Inc.,
    410 F. Supp. 2d 1005 (D. Colo. 2005)........................................................................7

Papazian v. Burberry Ltd.,
    No. CV 07-1479 GPS (RZx), 2007 WL 4812280 (C.D. Cal. Aug. 3, 2007)..........10

Partington v. American Intern. Specialty Lines Ins. Co.,
    443 F.3d 334 (4th Cir. 2006) .....................................................................................5

Price v. Lucky Strike Entertainment, Inc.,
    No. CV 07-960-ODW (MANx), 2007 WL 4812281 (C.D. Cal. Aug. 31, 2007) .............10, 16

Ramirez v. MGM Mirage, Inc.,
    524 F. Supp. 2d 1226 (D. Nev. 2007)........................................................................8

Randolph v. ING Life Ins. and Annuity Co.,
    486 F. Supp. 2d 1 (D. D.C. 2007)............................................................................11

Ratner v. Chemical Bank New York Trust Co.,
    54 F.R.D. 412 (S.D. N.Y. 1972) ..............................................................................12

Rustein v. Avis Rent-A-Car System,
    211 F.3d 1228 (11th Cir. 2000) ...............................................................................15

Saunders v. Louise's Trattoria, et al.,
　　No. CV 07-1060 SJO (PJWx), 2007 WL 4812287 (C.D. Cal. Oct. 23, 2007) ........................ 10

Seig, et al. v. Yard House Rancho Cucamonga, LLC, No. CV 07-2105 PA (MANx),
　　2007 U.S. Dist. LEXIS 97209 (C.D. Cal. Dec. 10, 2007) ................................................ 10, 18

Serna v. Big A Drug Stores, Inc., No. SACV 07-0276 CJC (MLGx),
　　2007 U.S. Dist. LEXIS 82023 (C.D.Cal. Oct. 9, 2007) ................................................... 10, 14

Serna v. Costco Wholesale Corp., Inc.,
　　No. CV 07-1491 AHM (JWJx), 2007 WL 234197 (C.D. Cal. Jan. 3, 2008) ................... 10, 12

Shields v. First Nat'l Bank of Arizona,
　　56 F.R.D. 442 (D. Ariz. 1972) .............................................................................................. 12

Shroder v. Suburban Coastal Corp.,
　　729 F.2d 1371 (11th Cir. 1984) ............................................................................................ 17

Simon v. Ashworth, Inc.,
　　No. CV071324, 2007 WL 4811932 (C.D. Cal. Sept. 28, 2007) ............................................ 23

Smith v. Montgomery County, Md.,
　　573 F. Supp. 604 (D. Md. 1983) .......................................................................................... 22

Soualian v. Int'l Coffee & Tea LLC,
　　No. CV 07-502-RGK (JCx), 2007 U.S. Dist. LEXIS 44208 (C.D. Cal. June 11, 2007) ........ 10

Spikings v. Cost Plus, Inc., No. CV 06-8125-JFW (AJWx),
　　2007 U.S. Dist. LEXIS 44214 (C.D. Cal. May 25, 2007) ........................................... passim

State Farm Mutual Automobile Insurance Co. v. Campbell,
　　538 U.S. 408 (2003) ......................................................................................................... 24-25

Stollenwerk v. Tri-West Healthcare Alliance,
　　No. Civ. 03-0185PHXSRB, 2005 WL 2465906 (D. Ariz. September 6, 2005) ...................... 11

Talley v. ARINC, Inc.,
　　222 F.R.D. 260 (D. Md. 2004) ............................................................................................... 7

Thorn v. Jefferson-Pilot Life Ins. Co.,
　　445 F.3d 311 (4th Cir. 2006) ............................................................................................... 6, 7

Torossian v. Vitamin Shoppe Indus., No. CV 07-0523 ODW (SSx),
　　2007 U.S. Dist. LEXIS 81961 (C.D. Cal. Aug. 8, 2007) ......................................... 10, 15, 17

Vartanian v. Estyle, Inc.,
  No. CV 07-0307 DSF (RCx), 2007 WL 4812286 (C.D. Cal. Nov. 26, 2007) ........................10

Vasquez-Torres v. McGrath's Publick Fish House, Inc., No. Cv 07-1322 AHM (CWx),
  2007 WL 4812289 (C.D. Cal. Oct. 12, 2007)...................................................................10

Vasquez-Torres v. StubHub, Inc., No. CV 07-1328 FMC (FFMx),
  2008 U.S. Dist. LEXIS 22503 (C.D. Cal. March 4, 2008) ...........................................10, 16, 18

Walco Investments, Inc. v. Thenen,
  168 F.R.D. 315 (S.D. Fla. 1996)...................................................................................9

Washington v. CSC Credit Services, Inc.,
  199 F.3d 263 (5th Cir. 2000) ....................................................................................7-8

Wilcox v. Commerce Bank of Kansas City,
  474 F.2d 336 (10th Cir. 1973) ....................................................................................13

STATUTES

15 U.S.C. § 45(b) .....................................................................................................8

15 U.S.C. § 1640......................................................................................................27

15 U.S.C. § 1681a.....................................................................................................20

15 U.S.C. § 1681c.................................................................................................1, 20

15 U.S.C. § 1681n...............................................................................16, 19, 20, 22, 26, 27

15 U.S.C. § 1681p .....................................................................................................8

15 U.S.C. § 1681s..................................................................................................8, 18

15 U.S.C. § 1681u .....................................................................................................8

15 U.S.C. § 1682k...............................................................................................27-28

47 U.S.C. § 227.......................................................................................................28

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. amend. VIII .......................................................................................................26, 27

**OTHER AUTHORITIES**

7 C. Wright & A. Miller, Federal Practice and Procedure 590 ....................................................22

Henry J. Friendly, Federal Jurisdiction: A General View 120 (1973).........................................15

Fed. R. Civ. P. 23....................................................................................................................passim

## I.    **INTRODUCTION**

Plaintiffs Patrick and Jeanne Stillmock, Jenny Barnstein and Leonid Opacic[1]

("plaintiffs") brought three purported class actions against Weis Markets, Inc. ("Weis Markets"),

each of which alleges the identical violation of the Fair and Accurate Credit Transactions Act

("FACTA"), 15 U.S.C. § 1681c(g).  FACTA amended the Fair Credit Reporting Act ("FCRA"),

with the goal of helping to prevent identity theft, by requiring retailers to truncate credit card

numbers appearing on electronically-printed receipts so that they include no more than the last

five digits of a credit or debit card account number.  15 U.S.C. § 1681c(g).

None of the named plaintiffs claims to have suffered identity theft or any other

cognizable harm.  Indeed, none of the named plaintiffs seeks to represent anyone who has

suffered any actual harm, having amended the class definition to explicitly exclude any actual

victims of identity theft.  In the absence of actual harm, FACTA provides a statutory damages

remedy **only** if a plaintiff can successfully show that a violation of the act was willful.  If a

plaintiff succeeds in that showing, he may be awarded statutory damages of $100 to $1,000.  15

U.S.C. § 1681n.

Shortly after FACTA went into effect, a multitude of class actions against retailers

littered the dockets of United States District Courts nationwide.  None of these cases alleged

actual harm to anyone.  In some cases, classes were certified; in others class treatment was

denied.  This case should join the latter set as soon as possible.

---

[1]     The United States District Court for the Eastern District of Pennsylvania transferred
Opacic's action to the District of Maryland for consolidation with the two actions
captioned above.  (See Docket and Transfer Order dated March 31, 2008, copies of which
are being submitted herewith as Exhibit A).  Plaintiffs briefed class certification as if the
Opacic case had been consolidated and, accordingly, Weis Markets addresses it here.

Plaintiffs have not met and cannot meet the requirements of Federal Rule of Civil Procedure 23(a) and (b) because, among other reasons:

- Although the named plaintiffs profess a concern about the risk of identity theft, when presented with the opportunity to alert Weis Markets and potentially lessen the risk to the class they now seek to represent, they failed "to protect the interests of the class," rendering them inadequate representatives of the putative class and sub-class.

- Certification under the injunctive relief provision of Rule 23(b)(2) is not appropriate (if it is even permissible), where private FACTA plaintiffs may seek only statutory damages and where injunctive relief is available to and reserved to the Federal Trade Commission.

- Individual issues predominate where individual members of the putative class must be examined as to their interactions with Weis Markets and where individual plaintiffs may have divergent interests respecting potential damages.

- The class action device is decidedly not "superior" to individual adjudications when it forces the defendant to choose between succumbing to a lopsided settlement with plaintiffs and their counsel or facing a potential class action verdict ranging from *1.4 billion dollars to 14 billion dollars* — plus potential punitive damages — where no one has suffered any harm.

- The mere possibility of such disproportionate awards in circumstances where no harm — even economic harm — has been suffered by anyone, renders the statute unconstitutional in a class context.

## II.   FACTS

### A.   Plaintiffs and Their Allegations

#### 1.   Plaintiffs Patrick and Jeanne Stillmock

The Stillmocks have not been victims, nor do they know of any victim, of identity theft resulting from any conduct of Weis Markets. (See Jeanne Stillmock Dep. 33:20-34:13, June 27, 2008, a copy of which is being submitted herewith as Exhibit B; Patrick Stillmock Dep. 30:6-9, June 27, 2008, a copy of which was submitted with plaintiffs' moving brief as Exhibit 24). Mr. Stillmock testified that he learned of FACTA after receiving a notice from a law firm (he

couldn't remember which firm) listing companies that were allegedly not properly truncating electronically printed debit and credit card receipts. (P. Stillmock Dep. 14:3-16:9). Mr. Stillmock has not produced this "list," despite agreeing to do so during his deposition and despite numerous requests made to Mr. Stillmock's counsel. (P. Stillmock Dep. 14:19-21; 17:10-14; 64:2-13).

Despite a professed concern with identity theft, neither Mr. or Mrs. Stillmock ever contacted Weis Markets to notify it about the May 4th receipt. (P. Stillmock Dep. 44:10-45:14; J. Stillmock Dep. 28:4-29:19). Instead, Mr. Stillmock got in touch with a lawyer, perhaps the same lawyer who sent him the "list" that named Weis Markets, although this is unclear. (P. Stillmock Dep. 47:4-8).

### 2.    **Plaintiff Jenny Barnstein**

Jenny Barnstein testified that she overheard a conversation at work about FACTA's requirements, after which she found a Weis Markets receipt. (See Barnstein Dep. 19:10-20:11, 24:6-8, 30:21-31:14, June 30, 2008, a copy of which was submitted with Plaintiff's moving brief as Exhibit 26). Barnstein works with the spouse of the attorney representing her in this action. (Barnstein Dep. 30:8-31:14). She was "not certain" whether her attorney's spouse was involved in the conversation that she "overheard" about FACTA. (Barnstein Dep. 44:14-45:17).

Barnstein does not allege that she has actually been harmed. (Barnstein Dep. 36:7-13). She has never been the victim of identity theft "to her knowledge," which implicitly means that she was so unconcerned about identity theft that she did not even acquire her credit report to find out if she was a victim of identity theft. (Barnstein Dep. 35:6-8). She does not know of anyone who has been a victim of identity theft. (Barnstein Dep. 35:20-36:1). Barnstein, like the other

named plaintiffs, never mentioned the receipt to anyone at Weis Markets or otherwise notified them of the problem she though she had discovered.  (Barnstein Dep. 27-28; 31:20-32:2).

### 3.     **Plaintiff Leonid Opacic**

Leonid Opacic does not allege that he has been harmed by Weis Markets. (See Leonid Opacic Dep. 31:25-32:6, July 31, 2007, a copy of which is being submitted herewith as Exhibit C).  Indeed, he is not even seeking damages.  When asked what he wanted from his lawsuit, Opacic testified that he wanted Weis Markets to stop printing the numbers on the receipt (Opacic Dep. 33:19-25), which Weis Markets has already done.

Opacic's identity has never been stolen.  (Opacic Dep. 31:7-8).  He does not know of anyone who has had his identity stolen as the result of credit or debit card receipts provided by Weis Markets.  (Opacic Dep. 31:19-21).  Despite his purported concerns over the threat of identity theft, Opacic also failed to warn anyone at the store or otherwise contact Weis Markets regarding his receipt.  (Opacic Dep. 26:4-27:12).  Opacic was unable to name the court in which his case is pending or describe the current status of the case.  (Opacic Dep. 35-36).

### B.     **Weis Markets**

Weis Markets estimates that it printed 14,578,600 receipts for debit and credit transactions between December 4, 2006 and June 7, 2007, the date on which all point-of-sale systems were adjusted to print no more than the last four digits of a customer's card number. (See Defendant's Answers and Objections to Plaintiff's First Set of Interrogatory at Nos. 4 and 5 and June 6, 2008 letter amending Defendant's Answers and Objections to Interrogatory Nos. 4

and 5, copies of which are being submitted herewith as Exhibit D).[2]  Accordingly, if class

certification is granted, Weis Markets will face potential statutory damages between about **$1.4

billion and $14 billion**.  To put that into some perspective, Weis Markets reported net income of

$50,990,000 and total shareholder's equity of $648,228,000 for the fiscal year ending December

29, 2007.  (See Declaration of William R. Mills ("Mills Decl."), submitted herewith as Exhibit E,

at ¶ 4).  Regardless of how remote the possibility of a finding of willfulness — and no rational

jury could make such a finding on the known evidence — Weis Markets would not be able to

pay a judgment based upon even the minimum statutory award.  (Id. at ¶¶ 5-6).

Weis Markets did not learn about FACTA until the first of these suits was filed.  (See

Franklin R. Simpson Dep. 8:20-9:17, June 11, 2008, a copy of which was submitted with

plaintiffs' moving brief as Exhibit 20).  Weis Markets immediately acted to conform its receipts

to FACTA.  (Simpson Dep. 9:3-10).  Mr. Simpson, who is responsible for Weis Markets' point

of sale systems (Simpson Dep. 6:7-17), testified that the company does not electronically store

credit card or debit card numbers once a transaction is complete. (Simpson Dep. 28-30).

## III.   ARGUMENT

### A.   Standards for Certifying a Class

Plaintiffs bear the burden of establishing that the requirements of Rule 23(a) of the

Federal Rules of Civil Procedure -- numerosity, commonality, typicality and adequacy of

representation -- and that the requirements of one of the subparts of Rule 23(b) are satisfied.  A

court may approve a class action only after conducting a "rigorous analysis" to ensure

---

[2]   Plaintiffs assert that the number is even higher, 16,543,635, meaning that potential
damages would exceed $16 billion.  See Pl. Mem. 15.  The difference is academic given
the limited wherewithal of the defendant.

compliance with Rule 23. General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982);

Partington v. American Int'l Specialty Lines Ins. Co., 443 F.3d 334 (4th Cir. 2006). Here,

plaintiffs have moved for class certification under Rule 23(b)(2) and Rule 23(b)(3).

**B.**  **The Proposed Class Cannot be Certified Under Rule 23(b)(2)**

Perhaps realizing the difficulties of obtaining class certification under Rule 23(b)(3), for

all the reasons that are discussed in sections C-E below, plaintiffs have tried to sidestep the (b)(3)

requirements by asking for injunctive relief. The attempt is unavailing. A Rule 23(b)(2) class

action may be maintained only where "the party opposing the class has acted or refused to act on

grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

Plaintiffs acknowledge that Weis Markets has long ago met the requirements of FACTA, so they

seek "an injunction against any such activity in the future." (Pl. Mem. 25).

Class-wide injunctive relief is not "appropriate" here because Weis Markets has corrected

the conduct that gave rise to complaints, and in fact did so as soon as practicable after it learned

of FACTA's requirements, and lacks any conceivable motive to violate FACTA in the future, as

it could only harm Weis Markets. It follows that the injunctive relief that plaintiffs seek — an

order that commands Weis Markets never again to print more than the last five digits of a credit

or debit card number *after* Weis Markets has stopped doing so — confers no benefit on the

putative class and has no proper nexus to the conduct alleged to have given rise to the action.

See Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 331 (4th Cir. 2006) (class certification

under Rule 23(b)(2) not proper where defendant was no longer engaged in the activity sought to

be enjoined) (citing In re Monumental Life Ins. Co., 365 F.3d 408, 416 (5th Cir. 2004) ("Of

course, certification under Rule 23(b)(2) is appropriate only if members of the proposed class would benefit from the injunctive relief they request.")).

Despite plaintiffs' bald assertion that the relief sought "does not relate . . . predominately to monetary damages" (Pl. Mem. 25), money damages and attorneys' fees are the apparent motivations for these lawsuits, in which no one has suffered or is suffering any harm. The Fourth Circuit Court of Appeals has held that class certification under Rule 23(b)(2) "is improper when the predominant relief sought is not injunctive or declaratory." Thorn, 445 F.3d at 331 (finding that injunction request was illusory and did not predominate over request for non-injunctive, non-declaratory relief). See also Talley v. ARINC, Inc., 222 F.R.D. 260, 270 (D. Md. 2004) (Rule 23(b)(2) certification is not proper where "the final relief that would be appropriate were Plaintiffs to prevail would not be injunctive in nature but would relate exclusively or predominantly to money damages.") (citing Carson v. Giant Food, Inc., 187 F. Supp. 2d 462 (D. Md. 2002), and Adams v. Henderson, 197 F.R.D. 162, 172 (D. Md. 2000)).

Even if plaintiffs had shown that injunctive relief were appropriate in these circumstances — and they have not shown it — it is prohibited by the statute. Several courts have held that a private litigant may not obtain injunctive relief under the FCRA. See Washington v. CSC Credit Services, Inc., 199 F.3d 263 (5th Cir. 2000); Owner-Operator Independent Driver Ass'n, Inc. v. Usis Commercial Services, Inc., 410 F. Supp. 2d 1005, 1007-08 (D. Colo. 2005) (discussing prior decisions and finding that courts considering this issue have overwhelmingly concluded that the FCRA precludes private litigants from seeking equitable relief).

In Washington, the Fifth Circuit noted that Section 1681p of the FCRA grants federal courts jurisdiction over "an action to enforce any liability created under this subchapter." 199

F.3d at 268 (citing 15 U.S.C. § 1681p).  Further, "[t]he term 'liability' is discussed in the FCRA's civil liability provisions, both of which expressly refer to damages and attorney fees without mentioning injunctive relief." Id.  "In contrast, the FCRA elsewhere expressly grants the Federal Trade Commission the power to obtain injunctive relief." Id. (citing 15 U.S.C. § 1681s(a); 15 U.S.C. 45(b)).  The Fifth Circuit reasoned that "the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC." Id.  The Fifth Circuit pointed out that, by contrast, 15 U.S.C. § 1681u specifically permits a consumer to pursue injunctive relief against the government. Id. at 269.  Notably, "where Congress intended to allow private injunctive relief under the FCRA, it expressly stated that this relief was available." Id.

The Fifth Circuit's reasoning in Washington has been applied to FACTA.  In Ramirez v. MGM Mirage, Inc., 524 F. Supp. 2d 1226, 1237 (D. Nev. 2007), the court ordered plaintiff's request for injunctive relief stricken because, "given the FCRA's plain language and structure, an individual consumer cannot pursue injunctive relief under § 1681n."

Accordingly, class certification under Rule 23(b)(2) is neither appropriate nor available, and the motion to certify under this subsection of Rule 23 must be denied.

### C.    Plaintiffs Fail the Superiority and Predominance Tests of Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), a class must meet two additional requirements beyond the Rule 23(a) prerequisites: (1) "common questions must predominate over any questions affecting only individual members" and (2) "class resolution must be superior

to other available methods for the fair and efficient adjudication of the controversy." Fed. R.

Civ. P. 23(b)(3); Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 615 (1997).

> **1.    The Superiority Requirement is Not Met Where the Damages Sought Would Bring About Annihilating Results Unrelated to Any Actual Harm to the Purported Class**

Rule 23(b)(3) provides several, non-exclusive factors to consider in the superiority

inquiry:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

As part of its rigorous analysis, a district court has broad discretion to consider additional

factors in making its superiority determination.  Walco Investments, Inc. v. Thenen, 168 F.R.D.

315, 317 (S.D. Fla. 1996).  The court has considerable discretion, according to the Advisory

Committee's comments to Rule 23(b)(3), because:

> In the situations to which this subdivision ((b)(3)) relates, class action treatment is not as clearly called for as in those described above, (i.e. (b)(1) and (b)(2)), but it may nevertheless be convenient and desirable depending upon the particular facts. Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

Fed R. Civ. P. 23(b)(3) (Advisory Comm. Note to 1966 amend.) (emphasis added).  The

superiority requirement clearly militates against class certification where the potential adverse

consequences — procedural unfairness and undesirable results — outweigh perceived benefits.

Numerous courts have denied class certification in similar FACTA actions for failure to

prove "superiority," where, as here: (1) the potential liability is grossly disproportionate to the

harm (which is non-existent) and (2) even the minimum statutory award, applied to a class,

would be ruinous to the defendant.[3]

---

[3]     It appears that a large number of the early filings of FACTA class actions were in the
California federal courts, and therefore many of the decisions on class certification have
come from those courts. See Appendix A, Tabs 1-11, Vasquez-Torres v. StubHub, Inc.,
No. CV 07-1328 FMC (FFMx), 2008 U.S. Dist. LEXIS 22503 (C.D. Cal. March 4, 2008)
(Tab 1); Blanco v. CEC Entertainment Concepts, L.P., No. CV 07-0559 GPS (JWJx),
2008 WL 239658 (C.D. Cal. Jan. 10, 2008) (Tab 2); Motisi v. United Air Lines, Inc., No.
07-2948-FMC-FFMx (C.D. Cal. Jan. 8, 2008) (Tab 3); Dister v. Apple-Bay East, Inc.,
No. C 07-01377 SBA, 2008 WL 62280 (N.D. Cal. Jan. 4, 2008) (Tab 4); Serna v. Costco
Wholesale Corp., Inc., No. CV 07-1491 AHM (JWJx), 2007 WL 234197 (C.D. Cal. Jan.
3, 2008) (Tab 5); Azoiani v. Love's Travel Stops, No. EDCV 07-90 ODW (OPx), 2007
WL 4811627 (C.D. Cal. Dec. 18, 2007) (Tab 6); Seig, et al. v. Yard House Rancho
Cucamonga, LLC, No. CV 07-2105 PA (MANx), 2007 U.S. Dist. LEXIS 97209 (C.D.
Cal. Dec. 10, 2007) (Tab 7); Vartanian v. Estyle, Inc., No. CV 07-0307 DSF (RCx), 2007
WL 4812286 (C.D. Cal. Nov. 26, 2007) (Tab 8); Bateman v. Am. Multi Cinema, Inc.,
No. 2:07-cv-00171-FMC-AJWx, 2007 WL 4812282 (C.D. Cal. Oct. 31, 2007) (Tab 9);
Saunders v. Louise's Trattoria, et al., No. CV 07-1060 SJO (PJWx), 2007 WL 4812287
(C.D. Cal. Oct. 23, 2007) (Tab 10); Moon v. Fedex Kinko's Office & Print Servs., Inc.,
No. C 06-07657-SI, 2007 WL 3022242 (N.D. Cal. Oct. 15, 2007) (Tab 11); see Appendix
B, Tabs 12-17, Vasquez-Torres v. McGrath's Publick Fish House, Inc., No. Cv 07-1322
AHM (CWx), 2007 WL 4812289 (C.D. Cal. Oct. 12, 2007) (Tab 12); Serna v. Big A
Drug Stores, Inc., No. SACV 07-0276 CJC (MLGx), 2007 U.S. Dist. LEXIS 82023
(C.D.Cal. Oct. 9, 2007) (Tab 13); Medrano v. Modern Parking Inc., No. CV 07-2949 PA
(AGRx), 2007 U.S. Dist. LEXIS 82024 (C.D. Cal. Sept. 17, 2007) (Tab 14); Price v.
Lucky Strike Entertainment, Inc., No. CV 07-960-ODW (MANx), 2007 WL 4812281
(C.D. Cal. Aug. 31, 2007) (Tab 15); Evans v. U-Haul Co. of Cal., No. CV 07-2097-JFW
(JCx), 2007 U.S. Dist. LEXIS 82026 (C.D. Cal. Aug. 14, 2007) (Tab 16); Torossian v.
Vitamin Shoppe Indus., No. CV 07-0523 ODW (SSx), 2007 U.S. Dist. LEXIS 81961
(C.D. Cal. Aug. 8, 2007) (Tab 17); see Appendix C, Tabs 18-23, Papazian v. Burberry
Ltd., No. CV 07-1479 GPS (RZx), 2007 WL 4812280 (C.D. Cal. Aug. 3, 2007) (Tab 18);
Lopez v. KB Toys Retail, Inc., No. CV 07-144-JFW (CWx), 2007 U.S. Dist. LEXIS
82025 (C.D. Cal. July 17, 2007) (Tab 19); Najarian v. Charlotte Russe, Inc., No. CV 07-
501-RGK (CTx), 2007 U.S. Dist. LEXIS 59879 (C.D. Cal. June 12, 2007) (Tab 20);
Najarian v. Avis Rent A Car Sys. LLC, No. CV 07-588-RGK (Ex), 2007 U.S. Dist.
LEXIS 59932 (C.D. Cal. June 11, 2007) (Tab 21); Soualian v. Int'l Coffee & Tea LLC,
No. CV 07-502-RGK (JCx), 2007 U.S. Dist. LEXIS 44208 (C.D. Cal. June 11, 2007)

Perhaps recognizing the sheer weight of these adverse decisions — and with no discernible harm to anyone — plaintiffs have concocted a theory of "increased risk" of identity theft due to Weis Markets' conduct. If the named plaintiffs did face such an increased risk, they clearly did nothing in response. No plaintiff testified to having checked his or her credit report. The Stillmocks continued shopping at Weis Markets and they and the other proposed named plaintiffs each had a chance to alert Weis Markets and each failed to do so. (P. Stillmock Dep. 44-45; J. Stillmock Dep. 28-29; Barnstein Dep. 27-28; 31:20 - 32:2); Opacic Dep. 26:4 - 27:12)

More importantly, courts have sensibly declined to recognize a speculative increase in the threat of identity theft. See Randolph v. ING Life Ins. and Annuity Co., 486 F. Supp. 2d 1, 8 (D. D.C. 2007) (citing Giordano v. Wachovia Sec., LLC, Civ. No. 06-476 (JBS), 2006 WL 2177036 (D. N.J. July 31, 2006), Stollenwerk v. Tri-West Healthcare Alliance, No. Civ. 03-0185PHXSRB, 2005 WL 2465906 (D. Ariz. Sept. 6, 2005); Guin v. Brazos Higher Ed. Serv. Corp., Inc., No. Civ. 05-668 RHK/JSM, 2006 WL 288483 (D. Minn. Feb. 7, 2006), Forbes v. Wells Fargo Bank, N.A., 420 F. Supp. 2d 1018 (D. Minn. 2006), Bell v. Axicom Corp., No. 06-485 (E.D. Ark. Oct. 3, 2006), Key v. DSW, Inc., 454 F. Supp. 2d 684 (S.D. Ohio 2006)). This Court should do the same.

When viewed against the complete absence of harm, the potential damages that FACTA would allow in a class setting are mind-boggling. Courts have not turned a blind eye to the unfairness of this result. In Azoiani, for example, the court commented that it "believes that putting a company out of business for failing to excise the expiration dates from credit card

---

(Tab 22); Spikings v. Cost Plus, Inc., No. CV 06-8125-JFW (AJWx), 2007 U.S. Dist. LEXIS 44214 (C.D. Cal. May 25, 2007) (Tab 23).

receipts—especially without proof of actual harm, is the type of undesirable result that the

Advisory Committee . . . warned against." 2007 WL 4811627, at *5.  Similarly, another district

court denied class certification in a FACTA action where the potential class recovery was

between $1.7 billion and $17 billion because the damages were "wildly disproportionate" to any

harm suffered by members of the putative class.  Costco, 2008 WL 234197, at *1.

Spikings, one of the first FACTA cases to analyze this point, observes that "many courts

have denied class certification on the grounds that class treatment fails to meet the "superiority"

requirement where the defendant's liability 'would be enormous and completely out of

proportion to any harm suffered by the plaintiff.'" 2007 U.S. Dist. LEXIS 44214, at *9 (quoting

London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) (citing Kline v.

Coldwell Banker & Co., 508 F.2d 226 (9th Cir. 1974)).  "In these cases, certification was not

denied solely because of the possible financial impact it would have on a defendant, but based on

the disproportionality of a damage award that has little relation to the harm to the plaintiff." Id.

The Spikings court, in denying class certification, contrasted the potential for billion of dollars in

damages against the fact that the plaintiff did not suffer any actual damage, and that there was no

evidence to suggest that any customer of the defendant ever suffered any actual harm. Id.

That court and numerous others that have since considered class certification in a

FACTA action have analogized FACTA with the Truth in Lending Act ("TILA").  In an early

TILA case, Ratner v. Chemical Bank New York Trust Co., 54 F.R.D. 412, 416 (S.D. N.Y. 1972),

the plaintiffs invoked a damages provision with a minimum award of $100 per violation, without

the need to prove actual harm.  The plaintiffs sought to certify a class of 130,000 members.  The

court ruled that class certification in that context would be a "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant." Id.

Other decisions relying upon Ratner soon followed. See Shields v. First Nat'l Bank of Arizona, 56 F.R.D. 442 (D. Ariz. 1972) (declining to certify class of 72,000 that sought $100 million in statutory damages); Alsup v. Montgomery Ward & Co., 57 F.R.D. 89 (N.D. Cal. 1972) (denying class certification in TILA case seeking $20 million in statutory damages for one class and $8 billion for another); Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336 (10th Cir. 1973) (affirming District Court's denial of class certification for TILA violation where class members were not harmed and aggregate of statutory damages would be extremely large); London, 340 F.3d at 1255 n.5 (class certification denied where damages would be "ad absurdum"); Kline, 508 F.2d 226, 234-35 (class treatment lacks superiority when potential damages "shock the conscience").

Here, as in the many cases cited above, even the minimum statutory damages, in a class of millions of people, would be enormous and egregiously out of proportion to any harm — of which there has been none, by definition. Were plaintiffs able to convince a jury that Weis Markets committed willful violations of FACTA, as unlikely as that prospect is, statutory damages would likely range from $1.4 billion to $14 billion, vastly exceeding the net worth of Weis Markets. (Mills Decl. at ¶¶ 4-6). FACTA does not "mandate" class treatment and, where what is alleged is a mere technical violation resulting in no cognizable harm, class treatment that could ruin a defendant cannot be superior to adjudicating the individual claims as they arise.

Plaintiffs' reliance upon opinions from the Illinois district courts is misplaced. All of those cases follow the Seventh Circuit's decision in Murray v. GMAC Mort. Corp., 434 F.3d 948

(7th Cir. 2006), in which that court held that an unconstitutionally excessive judgment under the

FCRA could be reduced after it was awarded, and therefore declined to consider the

excessiveness of damages at the class certification stage.  The Murray case, however, centered

on a mortgage company accused of substantive violations of the FCRA designed to enrich the

defendant.  As interpreted by one district court:

> The Seventh Circuit wisely decided to hold the mortgage company
> accountable for each and every affirmative violation of the FCRA.
> But here, [the defendant] has committed only a technical violation
> of FACTA.  By failing to truncate customer account numbers and
> expiration dates, [the defendant] sought no pecuniary gain for
> itself, nor affirmatively violated the statute. Given the purely
> technical violation of FACTA, [the defendant]'s due process
> argument is particularly powerful, especially in light of the lack of
> harm to [the plaintiff] or any other individual ... Additionally, the
> Murray court's argument that an unconstitutionally excessive
> judgment could be reduced after it was awarded is unpersuasive on
> these facts as well.  If Murray were to be applied, [the defendant]
> would face class litigation with "bet the company" type stakes for
> a technical violation of a statute that caused no injury. Any
> settlement agreed upon the parties could not be reduced for
> unconstitutional excessiveness.

Big A Drug Stores, 2007 U.S. Dist. LEXIS 82023, at *15-16.  For the same reasons noted in Big

A Drug Stores, this Court should not be persuaded by the Seventh Circuit's Murray decision and

those courts that considered themselves bound to follow Murray.

### 2.    Certification Permits Attorneys To Abuse The Legal System

Class certification is not appropriate where it is used as a device for the solicitation of

litigation or may be abused by attorneys.  Spikings, 2007 U.S. Dist. LEXIS 44214, at *16 (citing

Buford v. Am. Fin. Co., 333 F. Supp. 1243, 1251 (N.D. Ga. 1971)).  "In many cases Rule

23(b)(3) is being used as a device for the solicitation of litigation. This is . . . an 'undesirable

result' which cannot be tolerated." Buford, 333 F. Supp. at 1251. Many courts have agreed that

the availability of class actions in the FACTA setting has encouraged this type of abuse of the legal system. See, e.g., Evans, 2007 U.S. Dist. LEXIS 82026, at *21; Torossian, 2007 U.S. Dist. LEXIS 81961, at *13-14; Charlotte Russe, 2007 U.S. Dist. LEXIS, 59879 at *10; Avis, 2007 U.S. Dist. LEXIS 59932, at *16.

Here, plaintiff Patrick Stillmock testified during his deposition that he was alerted to FACTA by a "mailing" from a law firm that listed a number of companies in his geographic area that might be in violation of FACTA. Stillmock has failed to produce that "list," despite requests spanning two months. It is clear from his deposition testimony, however, combined with the Stillmocks' appearance as named plaintiffs in other FACTA cases (P. Stillmock Dep. 21:11-29:13), that the class device has encouraged the solicitation of FACTA litigation. Similarly, Ms. Barnstein testified that she learned about the receipt issue after overhearing a conversation at work, that may or may not have included her attorney's spouse, who recommended that Ms. Barnstein consult her husband.

Additionally, class certification is not appropriate if it would hand the plaintiffs a cudgel with which to intimidate defendants into a so-called "blackmail settlement," defined as "a settlement induced by a small probability of an immense judgment in a class action." In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1298 (7th Cir. 1995) (quoting Henry J. Friendly, Federal Jurisdiction: A General View 120 (1973)); see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 168 (3d Cir. 2001) (granting certification may generate unwarranted pressure to settle nonmeritorious or marginal claims); Rustein v. Avis Rent-A-Car System, 211 F.3d 1228, 1241 n.21 (11th Cir. 2000) (referring to "the blackmail value of a class certification that can aid the plaintiffs in coercing the defendant into a settlement"). Despite

Weis Markets' firm conviction that it did not willfully violate FACTA, potential damages in the
billions of dollars would pressure any business, including Weis Markets, to consider even a
lopsided settlement rather than risk "betting the company" at trial.  The potential for this type of
abuse is simply another example of the "undesirable result" that militates against class
certification.

### 3.      FACTA Encourages Individuals to File Their Own Suits

Plaintiffs argue, as they always do in these motions, that "it is unlikely that an individual
plaintiff would have the resources to pursue a claim - especially since any individual claim is
only worth between on hundred and one thousand dollars." (Pl. Mem. 28).  To the contrary, the
individual plaintiff needs no "resources" because FACTA provides for recovery of attorneys'
fees as well as damages.  15 U.S.C. § 1681n.  Many courts have noted that denial of class
certification does not prevent other putative class members from proceeding with individual
cases.  In Spikings, for example, the court declared that "any individual who feels that his rights
under FACTA have been violated but who has not suffered any actual harm can, as Plaintiff has,
file a lawsuit to recover statutory damages and, if successful, attorney's fees."  2007 U.S. Dist.
LEXIS 44214, at *15; see also StubHub, 2008 U.S. Dist. LEXIS 22503, at *21 (same); Blanco,
2008 WL 239658, at *2 (same).  Plainly, "a class action is not the only means of ensuring that
Defendant can be held accountable for violations of FACTA."  Spikings, 2007 U.S. Dist. LEXIS
44214, at *15; see also Price, 2007 WL 4812281, at *2 (in denying class certification in FACTA
litigation, court held that plaintiffs will be able to bring individual actions "with little or no
economic hindrance"); Avis, 2007 U.S. Dist. LEXIS 59932, at *17 ("Individual actions for
punitive damages, in conjunction with actions for compensatory damages, would adequately

compensate injured plaintiffs while imposing sufficient liability on Defendants to create general

deterrence."); Mathews v. Book-of-the-Month-Club, Inc., 62 F.R.D. 479 (N.D. Cal. 1974)

("[s]tatutory penalties, including attorneys' fees, are a substitute, in vindicating the rights of the

small litigant, for the class action device"); Anderson v. Capital One Bank, 224 F.R.D. 444, 453-

54 (W.D. Wis. 2004) (explaining that individual FCRA suits "are essentially costless because

[plaintiffs] are entitled to an award of attorney fees and costs they incur in bringing suit.");

Campos v. Choicepoint, Inc., 237 F.R.D. 478, 490 (N.D. Ga. 2006) (in holding the superiority

requirement was not met with regard to part of the proposed class the court noted that the

"FCRA provides sufficient motivation for adversely affected individuals to bring suit and for

attorneys to represent them."); Maguire v. Sandy Mac, Inc., 145 F.R.D. 50, 53 (D. N.J. 1992)

(where statute provides attorney fees to a prevailing plaintiff, "there is less incentive to protect

by class certification individuals with small claims").

     Moreover, the FCRA places enforcement duties in the Federal Trade Commission. See

15 U.S.C. § 1681s.  In FACTA cases, therefore, there is no role for the "private attorney general"

function of a class action.  See Evans, 2007 U.S. Dist. LEXIS 82026, at *20-21; Torossian, 2007

U.S. Dist. LEXIS 81961, at *14-15.  The statutory provisions vesting the FTC with enforcement

powers, including the exclusive remedy of injunctive relief, are further reasons to find that

"superiority" is not present in this case.

###     4.    Weis Markets' Immediate Compliance Eliminated The "Deterrence" Function of Class Treatment

     The purpose of statutes such as the FCRA (including FACTA) is to ensure compliance,

"not to punish an unwary violator." Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1377

(11th Cir. 1984).  Weis Markets promptly complied with FACTA, as soon as it learned of the

statute. (Simpson Dep. 9). This fact weighs against class certification, as it nullifies any possible deterrent effect of a class action. See StubHub, 2008 U.S. Dist. LEXIS 22503, at *20-21 ("defendants acted quickly to remedy the FACTA violation after it was found -- thus negating any deterrence benefit class treatment might otherwise provide.").

In denying similar motions for class certification, other courts have found that a retailer's swift effort to comply with FACTA upon receiving notice of an action against it supported denial of class certification. See Bateman, 2007 WL 4812282, at *1 (deterrent effect of a class action limited where defendant complied with FACTA within a few weeks of plaintiff's complaint); Charlotte Russe, 2007 U.S. Dist. LEXIS 59879, at *8-9 ("By immediately remedying their operations upon receiving Plaintiff's Complaint, Defendants demonstrated good faith while precluding future violations and nullifying any specific deterrence benefit that might have derived from class certification."); Spikings, 2007 U.S. Dist. LEXIS 44214, at *14 (class certification denied where defendant corrected the receipt problem within one month); Seig, 2007 U.S. Dist. LEXIS 97209, at *17 ("immediate action to comply with FACTA's requirements also supports the denial of certification.").

Plaintiffs' legally unsupportable request for an injunction instructing Weis Markets not to repeat its errors does nothing to change this analysis. Plaintiffs do not and cannot allege that Weis Markets profited in any manner whatsoever from the alleged FACTA violation. The need for deterrence is obviously lessened, if not completely eliminated, where there is simply no incentive for the defendant to repeat the conduct at issue.

**D.** **Common Questions of Law or Fact Do Not Predominate Over Questions Affecting Individual Class Members**

Plaintiffs are unable to meet their burden of showing that common issues will predominate. Necessary individualized inquiries of each putative class member eliminate any efficiency that a class action might promise and provide another compelling reason that class certification should be denied.

**1.** **"Degree of Willfulness" Must be Assessed on a Case-by-Case Basis**

There is likely to be only one central question in any case brought under 15 U.S.C. § 1681n, i.e., whether the defendant acted willfully. Plaintiffs are incorrect, however, in asserting that this is truly a common question as to all class members. They are equally wrong to suggest that "[o]nce common questions of liability are resolved, all that remains is the mechanical act of computing the amount damages suffered by each Class member." (Pl. Mem. 27). The statute provides that, upon a showing of willfulness, a plaintiff may obtain an award of $100 to $1,000. 15 U.S.C. § 1681n. Although the statute provides no clue as to how a jury should assess whether any given plaintiff gets $100, $1,000, or an amount in between, the statute plainly requires that such an assessment be made. Assuming that the statute invites a jury to determine the "degree of willfulness," or some other factor based on the plaintiff's interaction with the defendant, due process demands that the defendant have the opportunity to examine each putative class member on his evidence of willfulness — or the lack thereof. This process would necessarily entail examining, for example, whether the putative class member claims to have made Weis Markets aware of FACTA. These named plaintiffs are uniformly unaware of any compliance efforts by Weis Markets and all affirmatively declined to bring their receipts to Weis Markets' attention. Weis Markets is entitled to elicit the same testimony from each and

every class member in order to properly defend against the charge of willfulness. The result would be potentially millions of mini-trials on the issue of willfulness. As this is the only real question in the matter, it follows that common questions cannot predominate over individual issues.

### 2. Other Individual Factual Determinations Must Be Made

FACTA provides that no person shall print more than the last five digits of the card number "upon any receipt provided to the <u>cardholder</u> . . . ." 15 U.S.C. § 1681c(g)(1) (emphasis added). As described above, the statutory damages provision states that a person who willfully fails to comply with FACTA's receipt provision "with respect to any consumer" is liable to that consumer in the amounts provided. 15 U.S.C. § 1681n. "Cardholder" is not defined in the statute. "Consumer," on the other hand, is defined under FACTA as an "individual." 15 U.S.C. § 1681a. Weis Markets is therefore entitled to ask each putative class member whether (1) the person who received the receipt was in fact the cardholder and (2) whether the card belonged to an individual or was a corporate card.

In <u>Avis</u>, the court denied class certification in a FACTA matter in part because each individual would have to prove that he or she used a personal card, and not a business account card, as FACTA only applies to individuals. 2007 U.S. Dist. LEXIS 59932, at *9. The court reasoned that "[w]hile the Court recognizes the prevalence of common issues, certification would necessarily entail individualized factual determinations for up to 1.66 million customers who might be members of the proposed class." <u>Id.</u>

Other courts considering FACTA claims grounded in similar factual circumstances have found predominance lacking. <u>See</u> <u>Evans</u>, 2007 U.S. Dist. LEXIS 82026, at *9-10 (finding

liability was dependent upon individualized factual determinations as to which customers were "consumers" and which obtained "receipts" containing information that should have been excluded under FACTA and holding "[b]ecause such individualized questions underlie any determination of Defendant's liability and liability is the main issue in this case, the main issue requires separate adjudication of each class member's claim and certification is inappropriate."); see also Medrano, 2007 U.S. Dist. LEXIS 82024, at *9 (because FACTA liability hinges on a factual determination of which plaintiffs were "consumers" and which obtained "receipts," common questions of fact would not predominate).

Weis Markets is entitled to require that each putative class member prove each element of his or her claim, including that the transaction was a "consumer transaction" and that he or she was the cardholder for the card used at the store. There is no method for determining these facts without individual inquiries of each putative class member.

E.       **Class Treatment Would Not Be Manageable**

The fact that individual members of the putative class would be required to submit individual proofs points to another reason to deny class certification. Rule 23(b)(3) asks the Court to analyze "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). Gathering evidence and testimony from potential class members would not simply be burdensome and immensely time consuming, it would be nearly impossible given the number of credit card transactions that occurred during the relevant time period. Because the class cannot include any individual who made charges to a credit or debit card for which he or she was not the cardholder or that was a corporate credit card, it would necessitate asking that question of all putative class members, assuming they could even be found.

On this latter point, plaintiffs tellingly avoid all but the most cursory discussion of how they intend to identify members of the putative class. Plaintiffs not only ignore the problem created by FACTA's limitation to "consumers," but have asserted only bare "guesstimates" of the size of the putative class. (Pl. Mem. 15, 19). It is plaintiffs' burden, which they have failed to shoulder, to show that a readily identifiable class exists. See Smith v. Montgomery County, Md., 573 F. Supp. 604, 611 (D. Md. 1983) (at the time of judgment the individual members of the class must be readily identifiable) (citing 7 C. Wright & A. Miller, Federal Practice and Procedure 590). Plaintiffs' assertion that "[m]ost Class members can be identified from Defendant's own computerized records"—even if it were accurate, which it is not—would not substitute for a manageable method of identifying the class in its entirety—not just "most" of them. (Pl. Mem. 30) (Simpson Dep. 28-30).

The only support plaintiffs muster is an argument that the putative class can be identified (mostly) by Weis Markets' loyalty card information. (Pl. Mem. 30). Plaintiffs do not know (or at least do not say) how many Weis Markets customers used the loyalty card, preferring hearsay "statistics" from grocery trade organizations. (Pl. Mem. 30 n. 15). In stark contradiction to plaintiffs' "statistical" approach stands the deposition testimony, which reveals that Weis does not maintain the customer's credit or debit card information and therefore cannot readily identify putative class members. (Simpson Dep. 28-30). For the same reason, Weis Markets cannot even say whether the 14,578,600 receipts in the relevant time period apply to the same number of separate cardholders or many fewer cardholders making repeat visits.[4]

---

[4]    The inquiry is important not only to the question of who is in the proposed class, but also to damages, because statutory damages are available only "with respect to any consumer" and not "with respect to any violation." 15 U.S.C. § 1681n.

Finally, plaintiffs do not seem to acknowledge the effect of their decision—made at some point between the complaints and the briefing on class certification—to exclude from the class all persons having actual damages. This change was apparently driven by the discovery that these plaintiffs, who have no damages, could not adequately represent any person who did. Whatever the reason, the result of plaintiffs' decision to narrow the class exacerbates the considerable difficulty in managing these cases as a class action. Short of interviewing all putative class members or accessing each person's credit report (which is not feasible), there is no clear method — certainly plaintiffs have suggested none — by which to eliminate from the class those persons who might have a viable claim for actual damages.

It would be utterly pointless to certify a class that cannot be identified. Class certification should be denied for plaintiffs' failure to meet any requirement of Rule 23(b).

**F.      The Named Plaintiffs Fail to Satisfy the Rule 23(a) Requirement of Adequacy**

A proposed named plaintiff must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). One of the criteria for adequacy of representation is the "zeal and competence of the counsel and party who wish to prosecute the action." Fendler v. Westgate-California Corp., 527 F.2d 1168, 1170 (9th Cir. 1975). Here, plaintiffs' deposition testimony demonstrates little knowledge of the cases. See Simon v. Ashworth, Inc., No. CV071324, 2007 WL 4811932 (C.D. Cal. Sept. 28, 2007) (plaintiff deemed inadequate class representative in FACTA matter after admitting he had no knowledge of the case).

Moreover, while the proposed named plaintiffs uniformly profess a motivation to protect others from identity theft, none warned Weis Markets or otherwise alerted anyone, other than an attorney, when they had the opportunity to do so. The Court may well doubt the adequacy of a

proposed class representative who has abdicated the responsibilities toward absent putative class

members that he now professes in support of class certification.

### G.   FACTA's Statutory Penalty Provision, As Applied in a Class Action Context, is Unconstitutional

Leaving aside all the cogent reasons set forth above for denying class certification, the

Court may deny class status for one simple reason:  FACTA, as applied to this defendant in a

class action, is unconstitutional.  FACTA, in a class action context, clearly violates the Due

Process Clause of the Fifth Amendment by imposing grossly excessive damages that are

confiscatory and disproportionate to the harm alleged—which is none.  If that were not enough

to render the application of FACTA unconstitutional as applied to Weis Markets, FACTA's

statutory penalties impermissibly permit double damages for the same conduct.  Finally, FACTA

fails to provide any instruction as to how a fact finder is to decide to increase damages from $100

to some greater amount, meaning that any award over the minimum would be totally arbitrary

and a further violation of due process.

### 1.   A Class Action Under FACTA Allows Statutory Penalties That Are Confiscatory and Totally Disproportionate to the Harm

In State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 416 (2003)

(citations omitted), the United States Supreme Court reversed a $145 million punitive damages

award, where compensatory damages were $1 million, because the award violated principles of

due process.  Similarly, in BMW of North America v. Gore, 517 U.S. 559 (1996), the Supreme

Court struck down a $2 million punitive damages award as disproportionate to a $4,000 in

compensatory damages.  As the Supreme Court said, "to the extent an award is grossly

excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property."

State Farm, 538 U.S. at 417; see also Gore, 517 U.S. at 587 ("This constitutional concern . . . arises out of the basic unfairness of depriving citizens of life, liberty or property, through the application, not of law and legal processes, but of arbitrary coercion.").

The touchstone of these Supreme Court cases, and the decisions that apply them, is proportionality.  In a FACTA action brought on behalf of a putative class—where no harm at all is alleged—the lack of proportionality is striking.  One district court recently found the penalty that would be allowed in a FACTA class action setting rendered the statute unconstitutional.  See Grimes v. Rave Motion Pictures Birmingham, L.L.C., 552 F. Supp. 2d 1302 (N.D. Ala. 2008).  Grimes and its companion cases—in total four putative class actions—all alleged that the respective defendants willfully printed receipts in violation of FACTA, and all sought statutory damages of $100 to $1,000.  As in these cases, none of the Grimes plaintiffs alleged actual damages.  Citing primarily to State Farm, the Grimes court held that the imposition of FACTA's punitive statutory penalty, "without the suffering of any harm[,] is inherently disproportionate." 552 F. Supp. 2d at 1308.  The Grimes court squarely rejected the plea of the United States, as intervenor, to await the outcome of a trial before evaluating the statute's constitutionality:

> Should defendants' cry of impending financial disaster and annihilation be put off until disaster has predictably befallen them after a great expenditure of time and money, including the cost of providing notice to hundreds of unaware and uncomplaining class members? The very thought of having to consider post-judgment motions for a reduction of predictably confiscatory awards sends chills down this court's spine. Chilly or not, this court has enough spine not to postpone a decision on a crucial threshold matter when a decision on that matter by some court, is inevitable.

Id. at 1307-08.

Here, the conduct complained of is a technical violation of a statute that has resulted in no actual harm or damages to anyone. Plaintiffs have expressly declined to represent anyone who claims actual harm. Weis Markets received no economic benefit by its conduct, and immediately corrected the conduct on which these claims are based as soon as it learned of the statute. It is impossible to imagine an incentive for Weis Markets would repeat the conduct at issue. Given the total absence of a) any actual harm to anyone, b) any economic benefit to the defendant, or c) any need for deterrence, FACTA's statutory minimum damages, multiplied by millions, would constitute a grossly disproportionate and excessive penalty. Such a penalty violates the Fifth Amendment's strictures against arbitrary denial of due process and the Eighth Amendment's prohibition on "excessive fines." U.S. CONST. amend. VIII.

> ### 2. FACTA Unconstitutionally Mandates Double Damages Based on the Same Purported "Willful" Conduct

In addition to the statutorily mandated damages of between $100 and $1,000 for willful conduct, which are plainly punitive in nature given that no harm need be shown, FACTA also allows for punitive damages. See 15 U.S.C. § 1681n(a)(2). Since the award of statutory penalties is itself a punishment, the addition of punitive damages for the same conduct results in an impermissible recovery of double damages, which are universally disallowed. See, e.g., BUC Int'l Corp. v. International Yacht Council Ltd., 517 F.3d 1271, 1277 (11th Cir. 2008) (determining that double recovery or "overcompensation of a plaintiff for a single injury" is prohibited).

As the Grimes court put it:

> 'Due process' does not tolerate a defendant's being punished twice
> for the same conduct.

* * *

> The question of double punishment inhering in §§ 1681n(a)(1)(A)
> and 1681n(a)(2) cannot be ignored.  How to punish a violator with
> a substantial money judgment after he has already been punished
> with a monetary award exceeding the minimum of $100, is a
> question that defies an answer.

552 F. Supp. 2d at 1307.  And of course, the possibility of double damages only exacerbates the

unconstitutionality of what is already an "excessive fine."  U.S. CONST. amend. VIII.

### 3.     FACTA's Statutory Penalty Provision is Unconstitutionally Vague When Applied in the Class Action Context

As noted above, FACTA allows damage awards between $100 and $1,000, but provides

no standards for determining where an award should fall on that scale.  In Grimes, the court

found that the FCRA's statutory damages provision was unconstitutionally vague for this reason.

552 F. Supp. 2d at 1306-07.

The statutory damages scheme applied by FACTA contrasts sharply with other statutes

that impose statutory penalties and provide criteria for determining the penalty.  TILA, for

example, provides factors for the court, to wit, "[i]n determining the amount of award in any

class action, the court shall consider, among other relevant factors, the amount of any actual

damages awarded, the frequency and persistence of failures of compliance by the creditor, the

resources of the creditor, the number of persons adversely affected, and the extent to which the

creditor's failure of compliance was intentional."  15 U.S.C. § 1640(a)(2)(B).

Similarly, the Fair Debt Collections Practices Act ("FDCPA") also provides for statutory

damages "in the case of a class action (i) such amount for each named plaintiff as could be

recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class

members, without regard to a minimum collector . . . ."  15 U.S.C. § 1682k(a)(2)(B).  The

FDCPA also outlines factors the court must consider in awarding damages in the class action context, including "the frequency and persistence of noncompliance by the debt collect or, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." 15 U.S.C. § 1682k(b)(2).

The Telephone and Consumer Protection Act's ("TCPA") statutory damages provision, which plaintiffs attempt to analogize to FACTA, is similarly distinguishable.  The TCPA provides for statutory damages in the amount of $500 per violation or $1500 for willful violations.  47 U.S.C. Section 227.  Damages under the TCPA are fixed.  Unlike the TCPA where damages correspond to the level of intent of the defendant, FACTA liability only accrues for willful violations, forcing the jury into impermissible arbitrary determinations if they are to assess more than the minimum statutory amount.

## IV.   CONCLUSION

For all of the foregoing reasons, Defendant Weis Markets, Inc. respectfully requests that the Court deny plaintiffs' Motion for Class Certification.

                                    _____/s/_____
                                    Gerard J. Gaeng (Bar No. 04970)
                                    Rosenberg | Martin | Greenberg, LLP
                                    25 S. Charles St., Suite 2115
                                    Baltimore, MD 21201
                                    Phone: (410) 727-6600
                                    Fax: (410) 727-1115

                                    and

                                    OF COUNSEL

                                    Dana B. Klinges
                                    Charles M. Hart
                                    Timothy E. Stauss
                                    WolfBlock LLP
                                    1650 Arch Street, 22nd Floor
                                    Philadelphia, PA 19103
                                    Phone: (215) 977-2000
                                    Fax: (215) 405-2924

Dated: August 25, 2008