**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | |
|---|---|
| PATRICK and JEANNE STILLMOCK, JENNY BARNSTEIN, and LEONID OPACIC, *individually and on behalf of all others similarly situated,* | No. 1:07-cv-01342-MJG |
| *Plaintiffs,* | |
| v. | CONSOLIDATED ACTION |
| WEIS MARKETS, INC. and DOES 1-10, | |
| *Defendants.* | |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, FOR CERTIFICATION OF CLASS AND FOR APPROVAL OF THE FORM, MANNER AND ADMINISTRATION OF NOTICE

Plaintiffs, by and through their undersigned counsel, submit this memorandum in support of their Motion for Preliminary Approval of Settlement, for certification of this case as a class action under *Fed.R.Civ.P.* 23 (b)(3), and for Approval of the Form, Manner and Administration of Notice. Plaintiffs propose that this Motion for Preliminary Approval be decided without a hearing because the terms of the proposed settlement, and the class notice, are straightforward, conform to prior settlements in similar cases addressing similar claims, and are the direct result of arm's-length bargaining between and among the parties.

Plaintiffs respectfully request that the Court set a date for the Final Approval Hearing approximately ninety (90) days following the entry of the Order Preliminarily Approving Settlement, Certifying Class for Settlement Purposes, and with Respect to Notice, Final Approval Hearing and Administration ("Preliminary Approval Order"), submitted herewith. Plaintiffs will submit a final motion supporting the fairness of the proposed settlement after the class members have received

notice and have had an opportunity to object, comment or opt-out, and prior to the Court's final settlement approval hearing.

## I.    <u>Background</u>

This case concerns Weis Markets, Inc.'s (hereinafter "Weis," "Weis Markets" or "Defendant") alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*. Specifically, Plaintiffs alleged violations of an amendment to the FCRA, known as "FACTA." Congress enacted the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681(c)(g), to amend FCRA with the express purpose of protecting consumers from identity theft and recognized that certain practices, including printing customer receipts with more than the last five digits of a customer's credit or debit card number, heighten the risk of identity theft for consumers.

FACTA provides, in relevant part, that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction" (the "truncation requirement"). 15 U.S.C. §§ 1681c(g). Recognizing that not every exposure to identity theft will result in actual identity theft and that damages in all events will be hard to prove, Congress applied the statutory damage provision of the FCRA in the event of a willful violation of FACTA's truncation requirement in an amount between $100-$1000 per consumer. FACTA was enacted on December 3, 2003, but in order to give merchants such as Weis Markets ample time to comply with the truncation requirements, the law did not go into effect until January 1, 2005 for new credit card receipt printers and December 4, 2006 for all printers in use prior to January 1, 2005.

Plaintiffs asserted that, after FACTA's effective date, Weis Markets issued electronically printed receipts at the point of sale which did not comply with the truncation requirement.

Defendant contended that Plaintiffs' legal claims had no merit and that they would prevail in the lawsuit.

## II.     The Proposed Settlement

Plaintiffs and the Defendant arrived at the proposed settlement in this case after: (1) nearly four years of litigation, including multiple class certification briefings and an appeal to the United States Court of Appeals for the Fourth Circuit; (2) discovery and investigation; (3) review of numerous documents; (3) extensive research into the applicable law and factual issues; (4) two full-day mediation sessions with the Honorable Susan K. Gauvey; and (5) lengthy and arduous arm's-length negotiations.

The Settlement Agreement (a copy of which is attached as Exhibit 1 hereto) requires Defendant to pay an amount up to $7.50 in the form of a Voucher[1] to each Class Member who properly submits a Claim Form by the Claim Deadline, subject to a $2,000,000.00 Settlement Cap. Moreover, subject to the Settlement Cap, Defendant will pay the costs of notice, administration, attorneys' fees and costs (as approved by the Court) up to a maximum of $495,000 in fees, and $14,000 in costs, and Incentive Awards of $2,500 each to the Named Plaintiffs (subject to Court approval).  Further, the Settlement provides for a streamlined process for submitting a claim in this case.  Class Members merely need to fill out a short Claim Form and submit it either on-line or via U.S. Mail to the Settlement Administrator.

## III.    The Settlement Is Well Within the Range for Preliminary Approval

At this stage of the settlement process, the Court need only take a preliminary look at the settlement agreement to ensure that it is within "the range of possible approval."  In *Horton v.*

---

[1]      Unless otherwise indicated, capitalized terms shall have the same meaning as described in the Settlement Agreement.

*Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825 (E.D.N.C. 1994), citing *In Re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. 1379 (D.Md. 1983), the Court defined the appropriate protocol:

> ... the courts generally have followed a two-step procedure.  First, the court conducts a preliminary approval or pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval" or, in other words, whether there is "probable cause" to notify the class of the proposed settlement. Second, assuming that the court grants preliminary approval and notice is sent to the class, the court conducts a "fairness" hearing, at which all interested parties are afforded an opportunity to be heard on the proposed settlement. The ultimate purpose of the fairness hearing is to determine if the proposed settlement is "fair, reasonable, and adequate."

*Id.* at 827 (citations omitted).  *See also In re Microsoft Corp. Antitrust Litig*, 185 F. Supp. 2d 519 (D. Md. 2002) (applying "the range of possible approval" standard for preliminary approval); *Manual for Complex Litigation (Fourth)* § 21.632 at 320 n. 976 (2004) (endorsing the "range of possible approval" standard for preliminary approval).

The proposed class-wide settlement in this case – including a payment in the form of a Voucher of up to $7.50 (limited by the overall cap of $2 million) per Class Member – is believed by Plaintiffs' counsel to be a favorable and reasonable settlement based upon the claims and upon the defenses available to the Defendant.  *See e.g., Curiale v. Lenox Group, Inc.*, No. 07-1432, 2008 WL 4899474, *2, *10 (E.D. Pa. Nov. 14, 2008) (preliminarily approving a FACTA class action settlement for a Voucher for, *inter alia*, $5.00 off any purchase at Defendant's stores and listing similar FACTA settlements).  As a result, Plaintiffs' counsel respectfully submit that the Settlement is favorable for the Plaintiff class and most certainly in "the range of possible approval."

## IV.    The Proposed Class Should be Certified Under Rule 23(a) and (b)(3)

Subject to this Court's approval, the parties have also agreed that Plaintiffs will request, and Defendant will not oppose, class certification solely for settlement purposes.  The Class for

settlement purposes is:

> All persons in the United States who, at any time during the Class Period, received from Defendant at any of its retail locations, an electronically printed receipt at the point of sale or transaction which contained more than the five last digits of the person's credit or debit card number.

Excluded from the Settlement Class are all consumers who have actual damages they allege to have been caused by Defendant's alleged FACTA violations and who do not waive such damages by submitting a Claim Form, and all individuals who are now or have ever been executives of Defendant.

The proposed Settlement Class meets the requirements of Fed. R. Civ. P. 23(a)[2] and (b)(3).

## A.      Rule 23(a)(1) – Numerosity

The focus of the numerosity requirement of RULE 23 is judicial economy.  The rule does not set out a precise numerical standard, but presents an impracticability of joinder requirement, of which class size is an inherent consideration.  1 H. NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2003); *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998).  Here, it is undisputed that there were over 13 million noncompliant receipts issued during the Class Period, thus, there are at least 1 million potential Class Members.  It is clear that joinder of so many consumers would be impracticable and Plaintiffs meet the numerosity requirement.

## B.      Rule 23(a)(2) – Commonality of Issues

Rule 23(a)(2) requires only that there be a single common question of law or fact in order for the court to certify the class action.  This case raises numerous questions of both law and fact which

---

[2]      The parties reached this Settlement prior to the Court's ruling on Plaintiffs' Motion for Class Certification that was filed following remand from the United States Court of Appeals for the Fourth Circuit.  In the Court's original assessment, it found that Plaintiffs satisfied all of the requirements of Fed. R. Civ. P. 23(a).  *See Stillmock v. Weis*

are common to the Class, which include the following:

>        (a)     Whether the Defendant printed more than the last five digits of plastic payment card transaction receipts;

>        (b)     Whether the Defendant willfully violated Section 1681c(g) of the FCRA by failing to provide consumers, who used their plastic payment cards in point of sale transactions with Defendant, with electronically printed receipts that complied with the truncation requirement;

>        (c)     Whether the Defendant willfully violated Section 1681c(g) of the FCRA by putting cash registers and or other Devices into place on or after January 1, 2005, that electronically printed receipts at the point of sale that failed to comply with the truncation requirement;

>        (d)     Whether the Defendant and its agents should be enjoined from further engaging in such improper conduct;

>        (e)     the proper measure of statutory damages.

"It is important to note that [Rule 23 (a)(2)] does not require that all questions of law and fact raised by the dispute be common . . . ."  C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURES § 1763 at 12681 (West 1994); *Arrington v. Colleen, Inc.*, 2001 WL 34117734, *3 (D. Md. Apr. 2, 2001).  In fact, a single common question has been deemed sufficient to satisfy the commonality requirement.  *Peoples*, 179 F.R.D. at 498 (holding that a single common issue is sufficient to satisfy commonality); *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 553 (S.D.N.Y. 1995) (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992).

The pertinent factual and legal issues in this case clearly are common to the Class.  Here, the central common and unifying question applicable to the named Plaintiffs and all class members – whether the Defendant willfully violated Section 1681c(g) of the FCRA by providing consumers

---

*Markets, Inc.*, No. MJG-07-1342, 2009 WL 595642, *2 (Mar. 5, 2009).

using plastic payment cards in point of sale transactions with electronically printed receipts that failed to comply with FACTA's truncation requirements during the applicable time period – is identical in all material respects.

The requirement of commonality is satisfied where, despite some minor factual differences, the question of law linking the class is substantially related to the resolution of the litigation (i.e. all class members' rights were violated and relief should be awarded). *Himmler v. Weinberger*, 422 F. Supp. 196, 199 (E.D. Mich. 1976), *rev'd on other grounds*, 611 F.2d 137 (6th Cir. 1979)(citing *American Finance System, Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974)); *Harris v. Palm Springs Alpine Estates*, 329 F.2d 909 (9th Cir. 1964).  In the present case, not only are factual differences slight and irrelevant to the claims, uniform questions of law determine whether relief will be granted.  The requirement of commonality is satisfied.

## C.     Rule 23(a)(3) – Typicality of Claims

Each class member's claim is typical.  As stressed in *Peoples*, 179 F.R.D. at 498, "[t]he test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses." Therefore, "while the claims of particular individuals may vary in detail from one to another, the collective claims focus on particular policies applicable to each class member thereby satisfying the typicality requirement of Rule 23 (a)." *Briggs v. Brown & Williamson Tobacco Corp.*, Inc., 414 F. Supp. 371, 375 (E.D. Va. 1976).

In this case, Plaintiffs' claims present virtually identical fact patterns (the electronically printed customer receipt showing the first six and last four digits of the consumer's plastic payment card number) and legal theory (Weis Markets violated FACTA's truncation requirement) which each Class member would have to present if he or she filed an individual suit. The claim of every Class

member, therefore, is based upon a common pattern of alleged wrongdoing and conduct by Weis Markets. Named Plaintiffs' claims are, therefore, not only typical of the claims of the Class, they are virtually identical. *See Kohl v. Assoc. of Trial Lawyers of America*, 183 F.R.D. 475, 484 (D. Md. 1998).

### D.       Rule 23(a)(4) – Adequacy of Representation

Plaintiffs respectfully request that the Court appoint Patrick and Jeanne Stillmock, Jenny Barnstein and Leonid Opacic as Named Plaintiffs for the Settlement Class.

The standards of Rule 23(a)(4) are met if it appears that the named plaintiff's interests are not antagonistic to those of other class members and the plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation. *See e.g., Mitchell-Tracey v. United General Title Ins. Co.*, 237 F.R.D. 551, 558 (D. Md. 2006); *Peoples*, 179 F.R.D. at 499; *Bogosian v. Golf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086 (1978); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011 (1975); *Brown v. Cameron-Brown*, 92 F.R.D. 32, 40-41 (E.D. Va. 1981).

The requirement of adequate representation merely assures that absent class members, who will be bound by the result, are protected by a vigorous and competent prosecution of the case by someone who shares their interests. *See* 1 NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS § 3:21 (4th ed. 2003); *see also George v. Baltimore City Public Schools*, 117 F.R.D. 368, 371 (D. Md. 1987). The Court needs to ensure "that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian*, 561 F.2d at 449. The Named Plaintiffs in this case have no claim or interest that conflict with those of the Class. They have followed this case diligently and have given their depositions, answered Interrogatories, and produced all available documents.

Moreover, the Settlement Class is represented by competent and experienced counsel who have represented numerous classes in actions involving consumer frauds and other legal violations. Martin E. Wolf has served as counsel, and often lead counsel in more than 20 class actions, including cases in this Court.  Similarly, David A. Searles has served as counsel, and often lead counsel in many consumer class actions across the country.  Likewise, Richard S. Gordon, Katherine B. Bornstein, Cory L. Zajdel, and James A. Maro each have substantial experience in consumer class action litigation.

### E.    The Criteria of Rule 23(b)(3) Are Satisfied

After finding that all four requirements of Rule 23(a) have been met, the Court should certify the case as a class action if any one of three criteria in part (b) is satisfied.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Plaintiffs respectfully request that the Court certify the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3) provides that a class action is maintainable where "[t]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudication of the controversy."

Class certification of Plaintiffs' claims is appropriate under Rule 23(b)(3) because key factual and legal issues regarding Defendant's liability predominate throughout the Class, and a class action is the superior method of adjudicating claims such as the present that involve relatively small monetary damages.  *See e.g., Reibstein v. Rite Aid Corp.*, No. 09–2734, 2011 WL 192512, *7 (E.D.

Pa. Jan. 18, 2011) (certifying a FACTA class for settlement and noting that "[c]lass actions are particularly appropriate in such [statutory damages] cases").  It is black letter law that in determining whether common issues predominate, the Court's inquiry should be directed primarily toward the issue of liability.  *See Bogosian v. Gulf Oil Corp.*, 561 F.2d at 456; *see also Snider v. Upjohn*, 115 F.R.D. at 541; *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 345 (E.D. Pa. 1976).  In sum, Defendant's liability hinges on its uniform and consistent store-wide practice of including the first six and last four digits of the consumer's plastic payment card account numbers on electronically printed receipts.  The case also focuses on whether the Defendant's protocols, guidelines, and oversight of its receipt delivery protocol, constitute a willful violation of FACTA's truncation requirements, thereby subjecting Defendant to liability for statutory damages.  It is unnecessary to calculate damages, as every Settlement Class Member agrees to settle their statutory damages claim for the same amount of relief.

As this Court has stressed: "Generally, certification under this Rule is appropriate when settling the parties' differences in a single proceeding serves their interests by achieving 'economies of time, effort, and expense,' and by promoting uniformity of decisions as to similarly situated class members without sacrificing fairness." *Peoples*, 179 F.R.D. at 501 (quoting *Amchem Product, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).  As the United States Supreme Court recognized in *Amchem*, 521 U.S. at 625: "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."

In *Arrington v. Colleen, Inc.*, 2001 WL 34117734 (D. Md. Apr. 2, 2001), this Court, in certifying a consumer class alleging TILA violations, wrote that:

> In determining whether a class satisfies the requirement of Rule 23(b)(3), a court should consider: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any

litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

*See also Mitchell-Tracey*, 237 F.R.D. at 559 (same).

Based upon this analysis, it is clear that certification is appropriate. First, it is unlikely that an individual plaintiff would have the resources to pursue a claim – especially since any individual claim is only worth between one hundred and one thousand dollars. As one court has noted:

> This is precisely the kind of case that class actions were designed for, with small or statutory damages brought by impecunious plaintiffs who allege similar mistreatment by a comparatively powerful defendant, one that, if the facts alleged were proved, otherwise might get away with piecemeal highway robbery by committing many small violations that were not worth the time and effort of individual plaintiffs to redress or were beyond their ability or resources to remedy.

*Jackson v. Check'N Go of Illinois, Inc*., 193 F.R.D. 544, 547 (N.D. Ill. 2000). Second, Plaintiffs are not aware of any other similar non-class litigation commenced by any putative Class member against Weis Markets for FACTA violations. Third, judicial resources are economized and focused by handling this case as a class action. *Mitchell-Tracey*, 237 F.R.D. at 560; *Arrington,* 2001 WL 34117734 at *8. Indeed, unless Class members obtain relief through this class action, most will likely obtain no relief at all. There simply is no other practical means for this Class to challenge a practice which stands in clear violation of federal law. "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public." 6 H. NEWBERG AND A. CONTE, NEWBERG ON CLASS ACTIONS § 21:30 (4th ed. 2003). Alternatively, in the unlikely event that Class members become aware of their rights and are able to locate counsel, this would result in a multiplicity of scattered suits resulting in the inefficient administration of litigation.

Finally, the Court need not consider manageability issues in the context of class certification for settlement purposed only, as described above. *See Amchem*, 521 U.S. at 620; *In re Mutual Funds Inv. Litig.*, No. 04-md-15861-CCB, 2010 WL 2342413, *2 (D. Md. May 19, 2010) ("In determining whether to certify a settlement class, the Court follows the requirements of Rule 23 in all respects except that, by definition, the Court need not evaluate the "manageability" of a proposed settlement class at trial.") (citing *Id.*).

**F.     Class Counsel Should Be Appointed Under Rule 23(g)**

Plaintiffs respectfully request that the Court appoint the following as Class Counsel:  Richard S. Gordon, Martin E. Wolf and Katherine B. Bornstein of Quinn, Gordon & Wolf, Chtd.; David A. Searles of Donovan Searles, LLC; James Maro of Barroway Topaz Kessler Meltzer & Check, LLP; and Cory L. Zajdel of Z Law LLC.  Plaintiffs further request that the Court appoint Richard S. Gordon, Martin E. Wolf and Katherine B. Bornstein of Quinn, Gordon & Wolf, Chtd. as Lead Class Counsel.  Pursuant to Fed. R. Civ. P. 23(g)(1)(A), in appointing class counsel, the Court must consider:

> (i)  the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)  counsel's knowledge of the applicable law; and
>
> (iv)  the resources that counsel will commit to representing the class . . . .

Plaintiffs respectfully submit that proposed Class Counsel meet all of the criteria contained in Fed. R. Civ. P. 23(g) (as well as the requirements of Fed. R. Civ. P. 23(a)(4), *see* above).  Counsel have done a significant amount of work identifying and investigating the potential claims in this action.  Class Counsel expended efforts both before filing their cases – each Plaintiff filed a detailed

Complaint based on the underlying facts – and during the litigation of the case.  Indeed, this case did

not settle until after, *inter alia*, full class certification discovery led by Class Counsel, several rounds

of briefing and two full days of mediation with Magistrate Judge Gauvey.

Further, as described above, proposed Class Counsel have significant experience in class

action litigation and other complex litigation, including litigation on behalf of consumers.

Moreover, through the litigation of this case, through multiple class certification briefings and an

appeal to the United States Court of Appeals for the Fourth Circuit, Class Counsel have

demonstrated their knowledge of the applicable law.  Finally, Class Counsel have shown their

commitment to this action by committing substantial resources to the prosecution of this action,

including more than 1,000 hours of their time to prosecuting this claim.  Class Counsel respectfully

submit that they should be appointed to represent the Settlement Class.

## V.    The Proposed Notice is Appropriate

Following preliminary approval, potential claimants and class members must be given notice

concerning the nature of the settlement and of their rights.  In particular, Fed. R.Civ. P. 23(e)

requires that:

> (1)(A)    The court must approve any settlement, voluntary dismissal, or
>
> compromise of the claims, issues, or defenses of a certified class.
>
> (B)    The court must direct notice in a reasonable manner to all class
> members who would be bound by a proposed settlement, voluntary dismissal,
> or compromise.

These objectives will be satisfied by dissemination of notices in the manner proposed by this

Motion.  In the settlement context, notice shall advise the class of their right to exclude themselves

from the action, but at the same time afford maximum flexibility for the courts, consonant with due

process safeguards. 4 H. Newberg & A. Conte, *Newberg on Class Actions,*  § 11:53 (4th ed. 2002).

The Parties have agreed upon a form and manner of notice to class members which maximizes notice to class members of the proposed settlement and, if desired, their right to participate in the settlement approval process.  As set forth in the Settlement Agreement, there will be two forms of Notice, a Summary Notice (attached to the Settlement Agreement[3] as Exhibit B-1) and a Long-Form Notice (attached to the Settlement Agreement as Exhibit B-2).  Pursuant to the Settlement Agreement, the Summary Notice will be published in Weis Markets circulars, which are mailed to known Weis customers and distributed in the ordinary course of business to households in areas served by Weis Markets.  The Summary Notice will be published three times: Week 1 (within 30 days following entry of the Preliminary Approval Order), Week 3 and Week 5, thereafter.  The Weis Markets' circulars containing the Summary Notice will also be available at store entrances, or in another prominent place in each Weis Markets retail location.

The Long-Form Notice will provide a more detailed description of the Settlement Agreement and the Class Members' rights and options, and will be posted on a Website that will be set up and maintained by the Settlement Administrator.  The Website will include a function that allows Class Members to submit Claim Forms electronically, and to print Vouchers during the appropriate time periods stated in the Settlement Agreement.  In addition to the Long-Form Notice, the Website will make available the Settlement Agreement, Class Counsel's contact information and certain pleadings from this action, such as the Complaints, Defendant's Answers, the Motion for Class Certification and Defendant's opposition, and the decision of the Court of Appeals for the Fourth Circuit, No. 09-1632, 385 Fed. Appx. 267 (4th Cir. July 1, 2010).

---

[3]        The Settlement Agreement is attached hereto as Exhibit 1.

14

Individual mailed notice is untenable under the circumstances for two reasons. First, there is no repository of names and addresses for all Class Members. Only the banks that issued the credit/debit cards would have addresses for the customers who used their cards during the Class Period. Such information is impossible to obtain because the credit card information for each transaction is not stored electronically. Thus, it would be impossible to request contact information from the banks. Second, although some names and addresses may be available through Weis Markets' loyalty club program, the expense of mailing the notices to potential Class Members almost certainly would exhaust the majority of the amount recoverable to Class Members, making it not the best practicable notice under the circumstances. *See e.g., Hanlon v. Aramark Sports, LLC*, No. 09-465, 2010 WL 374765, *1 (W.D. Pa. Feb. 3, 2010) (permitting notice by publication, posting and website, noting the lack of access to addresses and the cost prohibitive nature of mailing notice in a similar FACTA action); *Klingensmith v. BP Products, North America, Inc.*, No. 07-1065, 2008 WL 4360965, *5 (E.D. Pa. Sept. 24, 2008) (same).

Plaintiffs believe that the proposed method of notice and distribution described above is the best practicable notice under the circumstances, and is likely to reach each class member who can reasonably be found.

## VI.    Proposed Settlement Administrator

Weis Markets has proposed, and Plaintiffs do not object, to the appointment of RG/2 Claims Administration LLC as the Settlement Administrator. RG/2 Claims Administration LLC has significant and extensive experience administering and managing class action settlements, will maintain the Website described above, and will oversee the distribution and collection of Claim Forms. In addition, the Settlement Administrator will be responsible for distributing the Vouchers to the Class Members following final approval.

15

VII.     <u>Conclusion</u>

For the reasons stated herein, Plaintiffs respectfully submit that this Court should grant the

Motion for Preliminary Approval, certify proposed Settlement Class, appoint Class Counsel, appoint

the Settlement Administrator and approve the form and manner of notice to the class.

Dated: March 31, 2011                          Respectfully submitted,


                                               <u>/s/Martin E. Wolf</u>
                                               Martin E. Wolf (Fed. Bar 09425)
                                               Richard S. Gordon (Fed. Bar 06882)
                                               Katherine B. Bornstein (Fed. Bar 28460)
                                               QUINN, GORDON & WOLF, CHTD.
                                               102 W. Pennsylvania Ave., Ste. 402
                                               Towson, MD 21204
                                               Tel.: (410) 825-2300
                                               Fax: (410) 825-0066

                                               David A. Searles
                                               DONOVAN SEARLES, LLC
                                               1845 Walnut Street, Ste. 1100
                                               Philadelphia, PA 19103
                                               Tel.: (215) 732-6067
                                               Fax: (215) 732-8060

                                               Cory L. Zajdel (Fed. Bar 28191)
                                               Z LAW, LLC
                                               10811 Red Run Blvd., Ste. #204
                                               Owings Mills, MD 21117
                                               Tel.: (443) 213-1977

                                               James A. Maro
                                               BARROWAY TOPAZ KESSLER
                                               MELTZER & CHECK, LLP
                                               280 King of Prussia Rd.
                                               Radnor, PA 19087
                                               Tel.: (610) 667-7706
                                               Fax: (610) 667-7056

                                               Robert K. Jenner (Fed. Bar 01465)
                                               JANET, JENNER & SUGGS, LLC

1829 Reisterstown Rd., Ste. 320
Baltimore, MD 21208
Tel.: (410) 653-3200

James A. Francis
FRANCIS & MAILMAN, P.C.
100 South Broad St., 19th Floor
Philadelphia, PA 19101

Jason M. Rapa
RAPA LAW OFFICE, P.C.
141 1st Street
Leighton, PA 18235

*Attorneys for Plaintiffs*